655 So.2d 405 (1995)
Charles E. WILLIAMS and Cheryl T. Williams
v.
Karen C. WILLIAMS.
No. 95-CA-13.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 1995.
*406 Allen J. Myles, Plaquemine, for appellants Charles E. Williams and Cheryl T. Williams.
Overton T. Harrington, Jr., Waldmann and Harrington, Gretna, for appellee Karen C. Williams.
Before KLIEBERT, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiffs, Charles and Cheryl Williams, appeal from a judgment in favor of defendant, Karen Williams, their daughter-in-law, holding that defendant is not indebted to plaintiffs for money they loaned to their son during his marriage to defendant, but she is indebted for the balance due on the purchase price of an automobile which she purchased from plaintiffs. For the reasons which follow, we amend the trial court judgment and, as amended, affirm.
Defendant was married to Bobby Williams, who is now deceased. Bobby Williams was the son of plaintiffs. The record indicates that, during the marriage, Bobby Williams left home one evening, without telling his wife where he was going. While he was out, he stabbed someone. Bobby Williams believed that the victim was responsible for his brother's suicide. Bobby Williams was arrested. Arrangements were made to obtain his release from jail upon payment of $10,000 to the victim. Bobby Williams telephoned his parents about his predicament and asked for help. At a family meeting, with defendant present, it was determined that plaintiffs, not having the liquid assets available, would go to the bank and borrow $10,000 to pay to the victim of their son's stabbing, to secure their son's release from jail. There was no written agreement concerning this loan between plaintiffs, their son or defendant. Plaintiffs made the loan from Iberville Trust and Savings Bank. The loan was payable in 35 monthly installments of $245, with a final balloon payment of $5,188.38 due July 10, 1994. A cashiers check for $10,000 was issued in the name of the victim and delivered. *407 Bobby Williams was released from jail. Thereafter, prior to his death, Bobby Williams made five payments on the loan to his parents with community funds from his employment.
After Bobby Williams' death, his spouse and plaintiff, Charles Williams, sought legal counsel concerning a possible wrongful death claim. An employment contract was entered into with the attorney bearing the signatures of plaintiffs and defendant. During discussions with the attorney, where both defendant and plaintiff, Charles Williams, were present, Charles discussed the $10,000 loan he had made for his son. With Karen's authorization, three monthly payments were made by the attorney to Charles in the amount of $245. All of the parties were friendly and working together at this time.
Subsequently, there was a disagreement among the parties. Karen notified her attorney not to make any more payments to Charles Williams. Also, during the marriage, defendant purchased an automobile for $1000 from plaintiff, Cheryl Williams, evidenced by a written purchase agreement. No money was paid for the automobile.
Plaintiffs sued defendant for repayment of the $10,000 loan and payment of the $1,000 owed on the purchase of the automobile. Plaintiffs allege that they made the $10,000 loan to Bobby Williams and defendant, and that they both agreed to repay it. Therefore, it is a community debt which defendant is now obligated to repay.
Defendant admits that she has not made any payments towards the purchase of the automobile and that she agreed to a purchase price of $1000. However, defendant contends that she is not indebted to plaintiffs for the $10,000 which, she contends, plaintiffs loaned to their son, constituting his separate debt. She argues that the $10,000 loan was not a community debt, but was borrowed to pay restitution to the victim of Bobby Williams' intentional tort, which was not for the benefit of the community. Under La. C.C. art. 2363, the $10,000 loan was Bobby Williams' separate obligation for which defendant is not liable.
After a judge trial on the merits on January 5, 1994, the trial judge took the matter under advisement. On May 23, 1994, the trial judge ruled in defendant's favor regarding the $10,000 debt. The trial court found that neither defendant nor the community between Bobby Williams and defendant was liable for the $10,000 loan by plaintiffs to Bobby Williams. The trial court also found that funds which had been paid to plaintiffs toward that debt by defendant should be credited to the purchase price on the automobile, leaving a balance due for the purchase of the automobile of $265. The trial court rendered judgment in favor of plaintiffs for that amount, $265, together with interest from the date of judicial demand. Plaintiffs appealed.
On appeal, plaintiffs argue that the trial court erred in not finding that the $10,000 loan was a community obligation. They argue that the loan was made during the community and, as such, constitutes a community obligation. They further contend that the loan was for the benefit of the community, and would, therefore, be a community obligation. They allege that defendant wanted them to make the loan and made statements that she would help repay it. In support of their position, plaintiffs produced testimony that their son had made five payments with community funds before his death and defendant herself authorized three payments through her attorney, from her wrongful death claim for her husband's death.
Defendant contends that the trial court was correct in finding that the loan was personal to her husband and not a community debt. She contends that it was her husband alone that asked his parents for the loan. She was never asked to co-sign for the loan. She admits that she wanted her husband out of jail, but that the money was used to pay restitution to a man that her husband had stabbed and was not for the benefit of the community. Defendant contends that plaintiffs voluntarily made the loan to help their son.
La.C.C. art. 2361, addressing community obligations, provides:

*408 Except as provided in Article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations.
La.C.C. art. 2363 provides, in pertinent part:
An obligation resulting from an intentional wrong not perpetrated for the benefit of the community, or an obligation incurred for the separate property of a spouse to the extent that it does not benefit the community, the family, or the other spouse, is likewise a separate obligation.
The record in this case clearly indicates that the obligation, for which the $10,000 loan was made, resulted from the intentional wrong of defendant's spouse, which was not perpetrated for the benefit of the community. Bobby Williams stabbed the victim in retaliation for something that he believed the victim had done to his brother. The incident had nothing to do with the community. While there was testimony that defendant was in accord with the plan, for plaintiffs to obtain a loan and pay the funds to the victim to secure Bobby Williams' release, there was also testimony that she was never asked to co-sign the loan or sign as surety.
Thus, we find no error in the trial court determination that the $10,000 loan made by plaintiffs to their son, to pay restitution to a man he had stabbed, was not a community obligation. It was an obligation incurred by Bobby Williams as a result of an intentional wrong not perpetrated for the benefit of the community. Under La.C.C. art. 2361, this was Bobby Williams' separate obligation for which defendant, his spouse, is not liable upon termination of the community.
Plaintiffs further argue that because defendant made statements that she would help repay the loan, and, in fact, authorized her personal injury attorney to make three payments to plaintiffs, that either these actions changed the character of Bobby Williams' separate obligation to a community obligation or that she guaranteed repayment, making her liable for the loan now. We disagree.
First, defendant denies making any promises to plaintiffs that she would repay the loan for her husband. Second, however, even if she had made such statements, that would not change the character of the obligation from a separate obligation to a community obligation. The obligation incurred, to redress a spouse's intentional tort not perpetrated for the benefit of the community, is that spouse's separate obligation. La.C.C. art. 2361. Promises by the other spouse that they will help repay the loan do not change its character as a separate obligation. Therefore, plaintiff's only avenue of recovery against defendant for the separate debt of her husband would be to establish that she bound herself to fulfill her spouse's separate obligation, or, in other words, that a suretyship was created.
Suretyship may not be presumed. Under La.C.C. art. 3038, "[s]uretyship must be express and in writing." This record is void of any written instrument evidencing an agreement by defendant to pay plaintiffs the $10,000 that they loaned to their son. Moreover, statements that she would help pay the loan, and three payments by her attorney with her authorization do not constitute an "express" binding by defendant of herself to pay her husband's obligation if he failed to do so.
Therefore, we find, based on the record before us, that the trial court did not err in finding that the $10,000 loan plaintiffs made to their son, used to pay restitution to a person he stabbed, was his separate obligation for which defendant was not liable.
However, in reviewing plaintiffs' arguments regarding error in the lower court judgment, we do find that the trial judge erred in crediting the three $245 payments, which defendant's attorney made to plaintiffs, against the $1000 car loan. The trial court found, and it has not been contested on appeal, that defendant was indebted to plaintiffs in the amount of $1,000, which she agreed to pay for the purchase of an automobile from plaintiffs. She had made no payments on that sale price. In reaching a final judgment in favor of plaintiffs for $265, the trial court credited the three $245 payments defendant's attorney had made to plaintiffs, *409 with defendant's authorization, against the $1,000 debt. We find that this was error.
The record is clear, from the testimony of the attorney, the amount of the checks and the notations on the checks, that those three payments were made for the purpose of covering the monthly payments on the $10,000 loan. While we have determined that defendant is not liable to repay the loan, that does not mean that payments she voluntarily made earlier can now be retracted or applied to another debt. She did not testify that she made the payments under mistake, fraud or duress. Rather, she testified that plaintiffs were helping her out and she was trying to help them. Therefore, we find that the trial court erred in crediting those payments against the $1,000 debt defendant owes for the purchase of the automobile.
Accordingly, for the reasons stated above, the judgment against defendant and in favor of plaintiffs is amended to $1,000. In all other respects, the judgment is affirmed. Each party is to bear her or their own costs.
AMENDED AND AFFIRMED.