760 So.2d 587 (2000)
Cheryl G. KENNEDY and Frank Kennedy, Plaintiffs-Appellants,
v.
Donna HOLDER, M.D., Kathleen Majors, M.D., and Sisters of Charity of the Incarnate Word, d/b/a Schumpert Medical Center, Defendants-Appellees.
No. 33,346-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 2000.
Jay A. Pucheu, Marksville, Counsel for Appellants.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, Counsel for Appellee Schumpert Medical Center.
*588 Pettiette, Armand, Dunkelman, Woodley & Byrd by Lawrence W. Pettiette, Jr., Shreveport, Blanchard, Walker, O'Quin & Roberts by Paul M. Adkins, Shreveport, Co-Counsel for Appellees, Holder, Majors and LIGA.
Before STEWART, GASKINS and KOSTELKA, JJ.
GASKINS, J.
Cheryl G. Kennedy and Frank Kennedy, the plaintiffs in this medical malpractice action, appeal from a trial court judgment granting a motion for summary judgment in favor of the only remaining defendant, Sisters of Charity of the Incarnate Word, Shreveport, d/b/a Schumpert Medical Center. For the reasons set forth below, we affirm.

FACTS
In June 1994, Mrs. Kennedy was injured in an auto accident. In the summer of 1995, she was referred to the Schumpert Pain Clinic for treatment of chronic pain. From August to October 1995, she was treated there by Dr. Donna Holder, Dr. Kathleen Majors, and Dr. Mark Hansman. In particular, on September 20, 1995, she received a differential epidural injection, administered by either Dr. Holder or Dr. Majors.[1] On September 22, 1995, she also underwent a lumbar sympathetic block which was administered by Dr. Hansman, an LSU resident doing an anesthesia rotation at the pain clinic. Mrs. Kennedy's condition worsened, and she was eventually diagnosed with E.coli osteomyelitis and discitis of the lumbar spine from L1 to L3. The plaintiffs believed that she was infected with the E.coli bacteria through the fault of Schumpert and/or the doctors who injected her.
The matter was submitted to a medical review panel (MRP). On September 2, 1997, the MRP issued a decision in which it concluded that: (1) the evidence did not support a finding that the doctors and Schumpert had failed to meet the applicable standard of care, and (2) the conduct of the defendants was not a factor in the resulting damage. In its written reasons, the MRP found that an infection occurred but there was no evidence as to its source. It was felt that such an infection "would be very unlikely to occur as the result of contamination from a percutaneous injection procedure." The panel found that each of the procedures was performed for legitimate reasons and according to the appropriate standard of care, including sterile technique. The MRP also noted that the complaint raised the issue of lack of informed consent. However, it found that, for each procedure, Mrs. Kennedy signed an informed consent form in which she acknowledged that infection was a risk of the injection procedure.
Thereafter, in October 1997, Mrs. Kennedy and her husband filed suit against Schumpert, Dr. Holder, Dr. Majors and the Louisiana Insurance Guaranty Association (LIGA)[2]. They pled res ipsa loquitor, asserting that the only possible source of infection was a contaminated operating environment and/or contaminated needles during the epidural injections, all of which were under the exclusive control of the defendants. In an amending petition, they alternatively pled that the defendants were strictly liable under La. C.C. art. 2317 and La. R.S. 40:1299.41(A)(8) and were liable for the administration of defective drugs contaminated with E.coli bacteria.
The defendant doctors and LIGA were dismissed from the suit without prejudice in June 1999. However, the plaintiffs reserved their rights against Schumpert.
*589 In July 1999, Schumpert filed a motion for summary judgment. In support of the motion, it submitted the MRP decision and the depositions of Dr. Majors; Dr. Joseph Dalovisio, the plaintiffs' treating infectious disease specialist; and Dr. Robert L. Penn.
Dr. Dalovisio testified that there was "no way" to prove how the E.coli bacteria got into Mrs. Kennedy's spine. He offered two possible scenarios: (1) an E.coli infection elsewhere in her body which spread by the bloodstream to the spine or disc, or (2) it was inoculated directly into the spinal area by contamination on the skin, through a needle or in the pain medications injected in her spine. Although he leaned toward the second theory due to the number of injections she had received, he admitted that he could not be "absolutely positive" and that there was "significant uncertainty" as to the infection source. He also stated that if the infection was spread through the bloodstream, most of the time the source of the E.coli infection in her body (such as a kidney or urinary tract infection) could be detected. He had no information suggesting any contamination by E.coli bacteria on any of the equipment used in the injections. He also did not have any information suggesting that sterile technique was broken by any of the medical personnel who attended to Mrs. Kennedy at Schumpert. He further stated that infection is an accepted risk of such injections and that infections can occur even when everything is done correctly. He also agreed that it would be more common to have a staphnot E.coliinfection as the result of contamination from a percutaneous injection.
Dr. Penn, Schumpert's expert in infectious diseases, testified that he did not know the source of Mrs. Kennedy's E.coli infection. However, he testified that it was most likely that it had spread hematogenously or through the bloodstream. According to Dr. Penn, the vast majority of vertebral osteomyelitis cases are hematogenous. While about 75% of the individuals who contract vertebral osteomyelitis through the bloodstream have an identifiable source or predisposing factor, 25% do not. While it was possible that Mrs. Kennedy contracted the infection as the result of the injections, Dr. Penn opined that it was unlikely.
Dr. Majors, a board-certified anesthesiologist who dealt solely in pain management, testified that she did not think it was probable that Mrs. Kennedy was inoculated with the E.coli infection during one of the injections, mainly because if she had received an infection in that manner, it would have been either staphylococcus or streptococcus. She also testified that the doctors personally sterilize the skin area where an injection is to be administered and that they use sterile needles dispensed by the nurses in a sterile fashion.
In a judgment signed on August 30, 1999, the trial court granted the motion for summary judgment and dismissed the plaintiffs' demands with prejudice at their cost. The court stated that no disputed genuine issues of fact remained and the defendant was entitled to judgment as a matter of law because: (1) the plaintiffs' expert testified that there was no way to prove how Mrs. Kennedy contracted the infection, and (2) the plaintiff was informed of the known risk of infection involved in the procedure.
The plaintiffs appeal.

SUMMARY JUDGMENT
Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action allowed by law. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Banks v. State Farm Insurance Company, 30,868 (La.App.2d Cir.8/19/98), 717 So.2d 687. Summary judgment procedure is favored in Louisiana. Taylor v. *590 Rowell, 98-2865 (La.5/18/99), 736 So.2d 812.
The mover has the burden of establishing an absence of a genuine issue of material fact. A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Banks, supra.
If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. And, as consistently noted in La. C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. Gardner v. Louisiana State University Medical Center Shreveport, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53.
Summary judgment is appropriate when all the relevant facts are marshaled before the court, the marshaled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith, supra; Taylor, supra; Banks, supra.

DISCUSSION
The plaintiffs contend that the trial court placed an improper burden of proof upon them to absolutely prove the manner in which Mrs. Kennedy contracted the infection. They further claim that there is ample evidence upon which a trier of fact could find that it was more probable than not that the infection resulted from non-sterile instruments or a non-sterile agent being used during the injections, all of which were supplied by Schumpert. Thus, they argue that Schumpert is strictly liable under La. C.C. art. 2317. Alternatively, they contend that Schumpert is liable under La. R.S. 40:1299.41(A)(8), which defines malpractice as including defects in drugs used upon a patient.
In order to prevail under La. C.C. art. 2317, which imposes a legal duty upon all persons to be responsible for things in their custody, the plaintiffs must prove: (1) the thing which caused damage was in the care and custody of the defendant, (2) the thing had a vice or defect which created an unreasonable risk of harm, and (3) the injuries were caused by the defect. Toups v. Cochran, 98-0331 (La.App. 4th Cir.10/7/98), 720 So.2d 140. Under La. R.S. 40:1299.41(A)(8), the plaintiffs must show a defect in the drugs supplied by Schumpert.[3]
In support of their claim of contaminated drugs, the plaintiffs have offered no proof of any defect. This constitutes an essential element of the plaintiffs' claim, and, in response to Schumpert's motion for summary judgment, they have been unable to produce any factual support sufficient to establish that they will be able to satisfy their evidentiary burden of proof at trial. While Dr. Dalovisio leaned toward the injections being the source of the infection, he did not state that, more probably than not, the drugs or the needles were contaminated and caused Mrs. Kennedy's injuries. He was unable to say that Schumpert did anything wrong in administering the injections to Mrs. Kennedy. Furthermore, according to Dr. Dalovisio, infection is an accepted risk of such injections and it can *591 occur even when everything is done correctly.
Additionally, we note that it is evident that the doctrine of res ipsa loquitur has no application in the instant case. In Griffin v. HCA Highland Hospital, Inc., 31,741 (La.App.2d Cir.3/31/99), 732 So.2d 624, we set forth the three criteria of that doctrine: (1) the accident must be of a kind that does not ordinarily occur in the absence of negligence; (2) the injury was caused by an instrumentality within the control of the defendant; and (3) evidence as to the cause of the accident is more readily available to the defendant. The testimony of the expert witnesses established that infection is an accepted risk of the procedures Mrs. Kennedy underwent. The evidence does not establish that her infection would not ordinarily have occurred without the negligence of Schumpert. Thus, an essential element for the applicability of res ipsa loquitur is missing. See also Roark v. St. Paul Fire & Marine Insurance Company, 415 So.2d 295 (La.App. 2d Cir.1982), writ denied, 416 So.2d 557 (La.1982).
Like the trial court, we find that there are no disputed issues of material fact and that Schumpert is entitled by law to summary judgment in its favor.

CONCLUSION
The summary judgment in favor of the defendant, Sisters of Charity of the Incarnate Word, Shreveport, d/b/a Schumpert Medical Center, is affirmed. Costs are assessed against the appellants, Cheryl G. Kennedy and Frank Kennedy.
AFFIRMED.
NOTES
[1] It appears that there was some confusion in Mrs. Kennedy's medical records. Although Dr. Majors' signature was stamped on the report, the nurses' notes apparently indicated that Dr. Holder actually performed the procedure.
[2] The doctors' liability insurer had been declared insolvent. Therefore, LIGA was a party to the suit as the insurer's successor.
[3] We make no finding as to whether the plaintiffs have a claim under strict liability or under the Medical Malpractice Act. Under either theory of recovery, the defendant is entitled to summary judgment.