795 So.2d 443 (2001)
Leland JEFFERY, Individually and as Executor of the Estate of Gladys Gwendolyn Birdwell Jeffery, Plaintiff-Appellant,
v.
B.L. BICKHAM, M.D. and Louisiana Medical Mutual Insurance Co., Defendants-Appellees.
No. 34,946-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
*444 Patricia N. Miramon, Georgia P. Kosmitis, Shreveport, Counsel for Appellant.
Cook, Yancey, King & Galloway, By Mary D. Bicknell, Shreveport, Counsel for Appellees.
Before NORRIS, BROWN and KOSTELKA, JJ.
KOSTELKA, J.
Leland Jeffery ("Jeffery"), individually and on behalf of the estate of his deceased mother, Gladys Gwendolyn Birdwell Jeffery ("Mrs.Jeffery"), appeals the judgment of the First Judicial District Court granting summary judgment in favor of B.L. Bickham, M.D. ("Dr.Bickham") and the Louisiana Medical Mutual Insurance Co. ("Lammico"). For the following reasons, we affirm.

FACTS
Between the years 1987 and 1995, Mrs. Jeffery[1] had been a patient of Dr. Bickham, a Shreveport internist. Dr. Bickham began treating Mrs. Jeffery in October, 1987 after a stroke left her with right-side paralysis. She continued to see Dr. Bickham three or four times a year for follow-up treatment of her stroke and then once a month for lab work.
On June 22, 1995, Mrs. Jeffery presented to Dr. Bickham complaining of generalized weakness and also that her mind was unclear. Dr. Bickham examined Mrs. Jeffery. She returned to Dr. Bickham on September 22, 1995 with similar complaints *445 and was given a flu shot. Finally, she saw Dr. Bickham for the last time on October 17, 1995. At that visit she again complained of weakness and difficulty ambulating. The facts given by the parties in brief contradict each other on whether Mrs. Jeffery complained of left lower extremity weakness/pain or right lower extremity weakness/pain, although the nurse's note from that date attached to Dr. Bickham's brief indicates that Mrs. Jeffery complained her right leg was giving her trouble. Based on these complaints, Dr. Bickham arranged for Mrs. Jeffery to undergo physical therapy, which she did not do.
On October 25, 1995, Mrs. Jeffery saw Dr. Ronald C. Hubbard ("Dr. Hubbard") of the Highland Clinic complaining of left ankle pain, but not left-side weakness. Dr. Hubbard noted after the examination that Mrs. Jeffery probably suffered from arthritis and acute ankle pain. There was no mention of lung cancer. He gave her a shot of Celestone and instructed her to follow up with him in one week.
On October 31, 1995, Mrs. Jeffery presented at the Highland Hospital emergency room ("ER") complaining of weakness in her left side along with continued weakness on her right side. Dr. Hubbard made various impressions of Mrs. Jeffery after she presented to the ER, which, again, did not include lung cancer. However, he admitted her to the hospital. The next day, a CT scan revealed brain metastasis and adenocarcinoma of the lung. Mrs. Jeffery died on December 16, 1995 at the age of 66.
This suit was filed by Jeffery, individually and as executor of the estate of his mother, against Dr. Bickham and Lammico (collectively "appellees"), seeking damages against Dr. Bickham for the alleged breach of the standard of care in his treatment of Mrs. Jeffery.
Dr. Bickham and Lammico filed their Motion for Summary Judgment in the trial court, which was granted on October 30, 2000. This appeal by Jeffery ensued.

DISCUSSION
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App.2d Cir.03/31/99), 731 So.2d 482. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Leckie v. Auger Timber Co., 30,103 (La.App.2d Cir.01/21/98), 707 So.2d 459. The burden of proof remains with the mover. However, if the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then that party need not negate all essential elements of the adverse party's claim, action, or defense but may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. See, La. C.C.P. art. 966(C)(2). When a motion is made and supported, as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a *446 genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Kennedy v. Holder, 33,346 (La.App.2d Cir.05/10/00), 760 So.2d 587.
Jeffery raises three assignments of error, two of which address the issue of the existence of disputed material facts. Primarily, he argues that the trial court erred in finding that the appellees had met their burden of proving no material fact existed. However, appellees did not have such a strenuous standard in this case. As already stated herein, La. C.C.P. art. 966 no longer requires a movant who does not carry the burden of proof in the lawsuit to negate every fact material to the nonmovant's case. The movant simply must negate an essential element of the nonmovant's claim on which the nonmovant will bear the burden of proof at trial. See also, Chase v. Louisiana Riverboat Gaming Partnership, 30,368 (La.App.2d Cir.02/25/98), 709 So.2d 904, writ denied, 98 0869 (La.06/26/98), 719 So.2d 1057.
Here, pursuant to La. R.S. 9:2794, Jeffery had the burden of proving the following: (1) the standard of care for treating a patient such as Mrs. Jeffery; (2) that Dr. Bickham breached that standard of care; and (3) that the breach caused Mrs. Jeffery's injuries.[2] Therefore, appellees' burden of proof on summary judgment was to negate one of the aforementioned elements under La. R.S. 9:2794each an essential element of Jeffery's claim. Appellees argue that Jeffery's failure to offer an affidavit of an expert physician stating that Dr. Bickham breached the standard of care for internal medicine physicians in his treatment of Mrs. Jeffery was a crucial omission in meeting his burden of proof, making summary judgment in their favor proper. We agree.
In a medical malpractice action, opinions of expert witnesses who are members of the medical profession are necessary to determine whether the defendant possessed the requisite degree of knowledge or skill, or failed to exercise reasonable care and diligence. Hinson v. Glen Oak Retirement Home, 34,281 (La. App.2d Cir.12/15/00), 774 So.2d 1134, 1139; Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991); Lee v. Wall, 31,468 (La.App.2d Cir.01/20/99), 726 So.2d 1044; Venable v. Dr. X, Dr. Y 95-1634 (La.App. 3d Cir.04/03/96), 671 So.2d 1249. This is especially true where the defendant physician has filed a motion for summary judgment supported with expert opinion evidence that his treatment met *447 the applicable standard of care, as is the case here. See, Lee, 726 So.2d at 1046.
However, we recognize that expert testimony is not always necessary for a plaintiff to meet the burden of proof in a medical malpractice case. Expert testimony is not required where the physician commits an obvious careless act from which a lay person can infer negligence. Hinson, 774 So.2d at 1139. But this case is not one involving an act of obvious negligence (e.g., amputating the wrong limb or leaving a sponge in a patient after surgery) on the part of Dr. Bickham. The facts in this case are closely aligned with those of Hinson at 1139, where we noted that:
[T]he medical issues presented ... are complex in nature and involve a determination of what symptoms suggest the onset of ... cancer and whether such symptoms manifested in the patient so as to prompt the physician to take diagnostic action at an earlier time. These issues require the assistance of expert witnesses to meet the burden of proving the standard of care, the breach of the standard of care, and the causal connection between the breach and any resulting injuries. Plaintiffs produced no expert testimony or other factual support to establish that they will be able to meet their evidentiary burden at trial.
Similarly, in this case there was no obvious negligent act which would not require the use of an expert witness, but the more complex medical issue of whether Dr. Bickham's failure to diagnose Mrs. Jeffery's cancer was a breach of the standard of care. Such a determination would necessitate the use of an expert witness by Jeffery to prove his case under La. R.S. 9:2794.
Although Jeffery identified a potential expert witness and the gist of his opinion in a response to appellees' first set of interrogatories (which pleading was filed with an opposition memorandum by Jeffery to appellees' Motion for Summary Judgment), such "opinion" was not in the form of a sworn affidavit, and we conclude it does not sufficiently set forth an expert's opinion to be used in opposing appellees' Motion for Summary Judgment. In a case such as this, where no obvious malpractice exists, the opinion of an expert witness is crucial for proving that a physician breached the standard of care. Without such an opinion, Jeffery cannot prove an essential element of his claim upon which he would have the burden of proof at trial. In order to defeat appellees' Motion for Summary Judgment, it was not enough for Jeffery to simply identify a physician and the gist of his testimony, especially in light of the fact that the trial court gave him more time in order to obtain such an opinion. Therefore, summary judgment was properly granted in favor of the appellees.
On a related issue, Jeffery raises an additional assignment of error arguing that the trial court erred in not finding that he produced sufficient factual support to establish that disputed issues of material fact existed which would serve to make summary judgment improper. However, our previous discussion pretermits any further discussion of this assignment, because, as we have already noted, under the present summary judgment standard, Jeffery cannot overcome his failure to provide an expert opinion regarding the applicable standard of care and the breach thereof the essential element of his claim against Dr. Bickham. We conclude that where an essential element of the nonmovant's case is negated, it follows that it is immaterial that other nonessential facts, such as those raised by Jeffery in this assignment of error, may be in dispute.
Finally, Jeffery argues that the opinion of the medical review panel was *448 erroneously considered by the trial court. As previously and consistently held by this court, and despite Jeffery's argument to the contrary, we note that the opinion of the medical review panel in this case is properly before us for consideration during our de novo review of the summary judgment. See, Hinson, 774 So.2d at 1137; Pugh v. Beach, 31,361 (La.App.2d Cir.12/11/98), 722 So.2d 442; Gardner on Behalf of Gardner v. Louisiana State University Medical Center in Shreveport, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53. Louisiana R.S. 40:1299.47(H) provides that the "report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant...." A medical review panel opinion is admissible evidence when offered in support of (or in opposition to, as the matter may be) summary judgment motions in medical malpractice cases. Hinson, 774 So.2d at 1137; Pugh, 722 So.2d at 444. The findings of the medical review panel, whose members are physicians actively working in their fields of expertise, are based on the experts' personal knowledge gained through experience and may be considered in evaluating a summary judgment. Hinson, 774 So.2d at 1137; Pugh, 722 So.2d at 444. Additionally, the Louisiana Supreme Court has held that expert opinion evidence is admissible at the summary judgment stage when such evidence meets the Daubert[3] standards for admissibility. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226. Therefore, we conclude that this assignment of error has no merit, and the opinion of the medical review panel was properly considered by the trial court.

CONCLUSION
For these reasons, the order of the trial court granting appellees' motion for summary judgment is affirmed, with costs being assessed to Jeffery.
AFFIRMED.
NOTES
[1] The surname of the deceased and her son has been spelled both "Jeffery" and "Jeffrey" by the parties. We have used the spelling "Jeffery," which was used by Leland Jeffery.
[2] Specifically, La. R.S. 9:2794 states in pertinent part as follows:

A. In a malpractice action based on the negligence of a physician ... the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
[3] Daubert v. Merrell Dow Pharmaceuticals., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).