821 So.2d 585 (2002)
AMERICAN BANK AND TRUST COMPANY OF COUSHATTA, Plaintiff-Appellant
v.
BOGGS AND THOMPSON, A Professional Law Corporation and A. Michael Boggs, Defendants-Appellees.
No. 36,157-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 2002.
*587 William R. Jones, Coushatta, C. Gary Mitchell, Shreveport, for Appellant.
Mayer, Smith & Roberts, L.L.P., by David F. Butterfield, Shreveport, for Appellees.
Before WILLIAMS, STEWART and KOSTELKA, JJ.
KOSTELKA, J.
American Bank and Trust Company of Coushatta ("AB & T") appeals the summary judgment granted by the Twenty-Sixth Judicial District Court, Bossier Parish, in favor of Boggs and Thompson, A Professional Law Corporation and A. Michael Boggs ("Boggs"). For the following reasons, we affirm.

FACTS
Boggs represented Thomas and Denise Washburn (the "Washburns") who were indebted to AB & T for approximately $45,000. In connection with that indebtedness, AB & T had instituted foreclosure proceedings against the Washburns upon their default. In response to the foreclosure lawsuit, Boggs wrote AB & T a letter ("the letter") dated November 21, 1997 on behalf of the Washburns, which stated as follows:
Please accept this letter as notice of my representation of Washburn, Inc. in relation to a claim regarding a construction project in the United States Virgin Islands [the "Virgin Islands litigation"]. On the referenced project, Washburn, Inc. incurred substantial losses due to circumstances caused by other contractors. At the present time, I am in the process of initiating a lawsuit against the contractors and the bonding company regarding the project.
Please allow this letter to serve as confirmation that in the event any funds are obtained regarding this litigation in the form of settlement and/or judgment, that your institution will be satisfied regarding any outstanding loans with Denise and/or Tommy Washburn....
The letter was directed to Leslie Gray ("Gray") and Randall Harrison of AB & T. After Gray received the letter, he met with the Washburns informing them that he would not forebear on the bank's foreclosure suit and would proceed to judgment; however, he agreed that AB & T would not execute any judgment obtained pending the outcome of the Virgin Islands litigation. In return, the Washburns agreed to make interim payments, which they initially did, but which stopped in mid-1998. AB & T then proceeded with its foreclosure against the Washburns. Subsequently, the Virgin Islands litigation settled, from which the Washburns received proceedsnone of which were paid to AB & T in satisfaction of the Washburns' debt.
In September, 1999, AB & T filed a breach of contract lawsuit against Boggs, claiming that Boggs defaulted and/or breached an obligation created in the letter. Boggs filed a Motion for Summary Judgment which was granted by the trial court. This appeal by AB & T ensued.

*588 DISCUSSION
On appeal, AB & T argues that the trial court erred in granting Boggs' Motion for Summary Judgment, claiming that material issues of fact existed and Boggs was not entitled to judgment as a matter of law.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Jeffery v. Bickham, 34,946 (La. App.2d Cir.08/22/01), 795 So.2d 443. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Leckie v. Auger Timber Co., Inc., 30,103 (La.App.2d Cir.01/21/98), 707 So.2d 459.
The burden of proof remains with the mover. However, if the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then that party need not negate all essential elements of the adverse party's claim, action, or defense but may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. See, La. C.C.P. art. 966(C)(2). When a motion is made and supported, as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Kennedy v. Holder, 33,346 (La.App.2d Cir.05/10/00), 760 So.2d 587.
In this case, the trial court determined that there were no genuine issues of material fact, and the record supports such a finding. At issue is the letter of November 21, 1997. Although there are issues of law in dispute, clearly none of the pertinent facts of the case are at issue, i.e., neither party disputes the statements made in the letter or even Boggs' intent under the letter.
Boggs contends that the intent of the letter was to have AB & T forebear on its foreclosure action against the Washburns pending the outcome of the Virgin Islands litigation. The record reflects that this fact was known by AB & T and was, therefore, undisputed. In deposition, Gray agreed that the purpose of the letter was to "stop" the foreclosure litigation. Specifically, when questioned regarding the letter, Gray acknowledged that AB & T knew it was going to get a letter for forbearance on its foreclosure with the promise of payment from the proceeds of the Virgin Islands litigation. In fact, Gray did not believe that Boggs intended to pay the Washburns' indebtedness in the event they did not. Thus, the pertinent facts of this litigation regarding the letter are not in dispute.
Additionally, summary judgment in favor of Boggs was proper as a matter of law. Under various legal theories, we reject the notion, as did the trial court, that *589 Boggs was personally obligated as a result of the language in the letter.
First, we note that pursuant to the law of mandate, Boggs would not be personally obligated for the Washburns' indebtedness with AB & T. A mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract. La. C.C. art. 3016; Wirthman-Tag Const. Co., L.L.C. v. Hotard 2000-2298 (La.App. 4th Cir.12/19/01), 804 So.2d 856. On the other hand, a mandatary who contracts in his own name without disclosing his status as a mandatary does bind himself personally for the performance of the contract. La. C.C. art. 3017. Generally, an agent will be held to have bound himself personally when he enters into an agreement without disclosing the identity of his principal. Frank's Door & Bldg. Supply, Inc. v. Double H. Const. Co., Inc., 459 So.2d 1273 (La.App. 1st Cir.11/20/84). The agent has the burden of proving that he disclosed his agency status and the identity of his principal if he wishes to avoid personal liability. Id. However, express notice of the agent's status and the principal's identity is not required to escape personal liability if the agent proves that sufficient evidence of the agency relationship was known by the third party so as to put him on notice of the principal-agent relationship. Id.
Here, Boggs expressly notified AB & T in the letter that he represented the Washburns as their attorney. Additionally, the record shows that before the letter was ever sent by Boggs and received by AB & T, a representative of AB & T had participated in a telephone conference with Boggs regarding the Washburns' loan status with the bank. Thus, AB & T obviously had knowledge other than that expressed in the letter that Boggs represented the Washburns as their attorney.
Second, Boggs was not the surety of the Washburns' debt. Suretyship is an accessory contract where a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. La. C.C. art. 3035. Such an agreement must be express and in writing. La. C.C. art. 3038. Revision Comment (b) to Article 3038 states that:
It is sometimes doubtful whether an individual has guaranteed payment of another's debt or has merely given an opinion as to the person's ability and willingness to perform. In such cases doubts are resolved against holding the individual as a surety on the theory that suretyship is a burden that one does not lightly undertake. See Ball Marketing Enterprise v. Rainbow Tomato, 340 So.2d 700 (La.App. 3rd Cir.1976); Exchange Nat. Bank v. Waldron Lumber Co., [177 La. 1015,] 150 So. 3 (La.1933).
An overriding rule regarding the principle of suretyship is that a contract of suretyship cannot be presumed or created by inference. Williams v. Williams, 95-13 (La.App. 5th Cir.04/25/95), 655 So.2d 405; Jimco, Inc. v. Gentilly Terrace Apartments, Inc., 230 So.2d 281 (La.App. 4th Cir.1970).
Here, there is nothing in the letter which indicates Boggs' express intent to be personally bound in the event the Washburns failed to pay AB & T out of the Virgin Islands litigation proceeds. We cannot presume Boggs' intent to be bound from the language of the letter. Therefore, the letter clearly did not create a suretyship agreement by Boggs in favor of AB & T.
Finally, we cannot say that Boggs is obligated to AB & T under the general principles of contract law. Even if we consider the statements in the letter as an offer by Boggs to be personally obligated to AB & T, said offer was never *590 accepted by AB & T; thus, no contract existed between Boggs and AB & T. A basic principle of contract formation is that a contract is formed by the consent of the parties established through offer and acceptance. La. C.C. art.1927.
Under the facts of this case, AB & T never accepted the "offer" it insists Boggs made in the letter. Instead, after receiving the letter, Gray contacted the Washburns and the parties met in Coushatta to discuss the pending foreclosure against the Washburns. Notably, Boggs did not attend the meeting between Gray and the Washburns. At that meeting, Gray declined to stop the foreclosure proceeding, stating he would proceed with the litigation and obtain a judgment against the Washburns; however, he agreed not to execute the judgment in exchange for the Washburns' promise to make interim payments. Gray's subsequent offer to the Washburns constituted a counteroffer, which had the effect of negating any offer that might have been made by Boggs in his letter. An acceptance not in accordance with the terms of the offer is deemed to be a counteroffer. La. C.C. art.1943. This subsequent agreement made in Coushatta constituted the contract between the parties, AB & T and the Washburns. When the Washburns failed to make the agreed-upon payments, AB & T commenced executing its judgment against the Washburns. See, Morehouse Parish Hosp. Service Dist. v. Pettit, 25,396 (La.App.2d Cir.01/19/94), 630 So.2d 1338, writ denied, 94-0449 (La.04/07/94), 635 So.2d 1135.
Moreover, for these same reasons, it is evident that AB & T did not rely to its detriment on the statements made by Boggs in the letter. Obviously, AB & T chose not to take the course of action suggested in the letter, i.e., stopping the foreclosure proceeding in anticipation of being satisfied from the proceeds of the Virgin Islands litigation. AB & T did not rely on the representations made by Boggs, but rather negotiated another contract with the Washburns regarding the repayment of their loans. Because there was no reliance by AB & T on the letter, Boggs could not be liable to AB & T under the theory of detrimental reliance.

CONCLUSION
For the foregoing reasons, the trial court's judgment granting the Motion for Summary Judgment filed by Boggs is hereby affirmed. Costs of this appeal are assessed to American Bank and Trust Company of Coushatta.
AFFIRMED.