STEWART, J.
12Plaintiffs-Appellants, Randall and Pamela Rodgers (hereafter “The Rodgers”), are appealing a summary judgment granted in favor of Defendant-Appellee, Leon S. Miletello, dismissing him from this action. For the following reasons, we affirm.
FACTS
On March 7, 2001, the Rodgers entered into an asset purchase agreement, whereby they agreed to sell certain properties totaling $600,000.00 to Xtreme Entertainment, L.L.C. (hereafter “Xtreme”). The property being sold included inventory, gaming machinery and equipment, immovable property, office equipment and furniture, the Rodgers’ rights as lessors under various leases covering portions of the immovable property, the Rodgers’ trade name “North Louisiana Amusement & Games”, and other assets involving video poker gaming contracts and facilities owned by the Rodgers. The Rodgers received a down payment at closing and the balance |3of the purchase was represented in the agreement via a nonnegotiable promissory note, in their favor, to be executed by Xtreme or its designee. North Louisiana Amusement and Gaming, L.L.C. (hereafter “NLAG”), a separate limited liability company formed to operate the new business, executed this promissory note on March 7, 2001, in the principal amount of $177,207.04 in order to satisfy the remaining payment obligations under the asset purchase agreement. The promissory note executed by NLAG was in favor of the Rodgers with 96 monthly payments to be made in the amount of $2,505.12 starting April 10, 2001. Although payments were initially made on the note executed by NLAG, the payments ceased and the note remains in arrears and unpaid with a principal balance of approximately $153,000.00.
An additional promissory note was executed by NLAG in favor of Randall Rodgers in the amount of $30,000.00, with interest from March 7, 2001, at the rate of eight percent. This note was to be satisfied in two annual installments in the amount of $16, 823.08, payable on March 7, 2002, and March 7, 2003. The entire $30,000 principal remains unpaid and owing, interest included. Also effective March 7, 2001, was a guaranty agreement, in the amount of $6,650.00, executed by NLAG in favor of Randall Rodgers.
Both the promissory notes and the guaranty agreement were executed by Leon S. Miletello, who is the sole owner of NLAG.
|4The Rodgers filed suit to enforce collection under the promissory notes, as well as the guaranty agreement. Xtreme, NLAG, and Miletello were named as code-fendants. The Rodgers filed a motion for summary judgment, seeking a determination that Miletello, as the signer of the two promissory notes and the guaranty agreement, did not have the authority to execute on behalf of NLAG. Therefore, he was personally liable under those instruments. In turn, Miletello filed a motion for summary judgement, seeking a determination that he did not have any personal liability under either promissory note or the guaranty agreement. Miletello prayed for dismissal from the suit.
On January 11, 2010, the trial court denied the Rodgers’ motion for summary judgment and granted Miletello’s motion for summary judgment, dismissing him *291 from the suit. The Rodgers now appeal, asserting three assignments of error.
LAW AND DISCUSSION

The Rodgers’ Motion for Summary Judgment/Miletello’s Agency Authority

In the Rodgers’ first assignment of error, they assert that the trial court erred denying their motion for summary judgment and determining that Miletello was not bound personally under the promissory notes and the guaranty agreement. They assert that Miletello did not provide any evidence | sthat he had any actual or apparent authority to execute the promissory notes and guaranty agreement in a representative capacity for NLAG. Similarly, in the Rodgers’ third assignment of error, they argue that the trial court erred in dismissing Miletello from this action, when the undisputed evidence shows that he executed the two promissory notes and a guaranty agreement on behalf of NLAG, without any agency authority to do so. Due to the similarity of these two assignments, we will discuss them together.
Appellate courts review summary judgments de novo, while considering the record and all reasonable inferences drawn from the record in the light most favorable to the nonmovant. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764; Neidlinger v. Warden Medical Dept. & XYZ Inc. Co., et. al., 45,235 (La.App. 2 Cir. 5/19/10), 38 So.3d 1171. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2).
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. | fi966(B). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.
Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2). Once the mover has properly supported the motion for summary judgment, the failure of the nonmoving party to produce evidence of a factual dispute mandates the granting of the motion. Neidlinger, supra; Huber v. Liberty Mutual Ins. Co., 00-0679 (La.App. 4 Cir. 2/7/01), 780 So.2d 551.
Determinations of an agency relationship and the scope of authority are essentially factual matters, subject to the manifest error standard of review. Webb v. Lagniappe Hospital, 30,659 (La.App. 2 Cir. 6/24/98), 714 So.2d 901. A mandatary who contracts in the name of the principal within the limits of his authority does not bind himself personally for the performance of the contract. La. C.C. art. 3016. On the other hand, a |7mandatary who contracts in his own name without disclosing his status as a mandatary binds himself personally for the performance of the contract. La. C.C. art. 3017. A manda-tary who exceeds his authority is personally bound to the third person with whom he *292 contracts, unless that person knew at the time the contract was made that the man-datary had exceeded his authority or unless the principal ratifies the contract. La. C.C. art. 3019. One who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary. La. C.C. art. 3021.
Generally, an agent will be held to have bound himself personally when he enters into an agreement without disclosing the identity of his principal. Irrigation Mart, Inc., v. Gray, 42,442 (La.App. 2 Cir. 9/19/07), 965 So.2d 988, writ denied, 2007-2108 (La.12/14/07), 970 So.2d 522; American Bank and Trust Co. of Coushatta v. Boggs and Thompson, 36,157 (La.App. 2 Cir. 6/12/01) 821 So.2d 585. The agent has the burden of proving that he disclosed his agency status and the identity of his principal if he wishes to avoid personal liability. Id. However, express notice of the agent’s status and the principal’s identity is not required to escape personal liability, if the agent proves that sufficient evidence of the agency | srelationship was known by the third party so as to put him on notice of the principal-agent relationship. Id.
NLAG’s Articles of Organization states in part:
The business of the company shall be managed by its manager. The Manager shall be the mandatary of the Company for all matters in the ordinary course of its business including, without limitation, the sale, lease or encumbrance of its assets, both movables.
NLAG’s Operating Agreement states in pertinent part:

NLAG Operating Agreement, Section 3.1

The initial member of the Company shall be Leon S. Miletello, Jr. Other Persons may be hereafter approved for membership solely by the unanimous written consent of the Members. In all instances, admission of any new Member is in the sole discretion of the Members.

NLAG Operating Agreement, Section 3.5:

... Except as otherwise provided by the Act, the Articles of this Agreement, the affirmative vote of a majority of the total votes of the Company shall be required to approve any matter brought before the Members.

NLAG Operating Agreement, Section Í.2:

The Manager, or each Manager acting individually if there is more than one, may delegate any of his powers, rights and duties hereunder, and may appoint, employ, contract or otherwise deal with any Person for the transaction of the business of the Company, which Person may, under supervision of the Manager, perform any acts or services for the Company as are within the powers of the Manager and which the Manager may approve.
|3NLAG’s Initial Report named Scott Griffis as the manager of NLAG:
The name and municipal address of the first manager of the company is:
Scott Griffis
1036 St. Charles Street
Bossier City, Louisiana 71112
Regarding the two promissory notes at issue, they both state, in relevant part, that “North Louisiana Amusement and Gaming, L.L.C. promises to pay ...” The two notes do not contain any similar statements of any kind regarding Miletello in his personal capacity. Similarly, the guaranty agreement states that the “guaranty contained therein” is given by the “Guarantor,” who is then defined as “North Louisiana Amusement and Gaming, L.L.C.” *293 Again, no reference is made of any personal liability to Miletello. Miletello’s signature appears in the location designated for NLAG in all three documents. His name does not appear anywhere else on all three documents.
In his affidavit, Miletello stated that he owned 100% of NLAG, and has done so since the company was formed. Miletello also admitted that he signed and executed the three documents at issue, as sole owner of NLAG and as its official representative and agent. He denied intending to execute the documents in his personal capacity. He explained in his affidavit that | mScott Griffis, NLAG’s manager, was unavailable to sign the documents.
Miletello alleges that he communicated his authority, as a representative and sole member of NLAG, directly to the Rodgers. No one expressed confusion at the time the documents were executed, nor was Mi-letello’s authority questioned. The record does not provide any indication that the Rodgers objected to Miletello signing the documents in a representative capacity. Additionally, the Rodgers accepted the payments initially made on the note. The record also fails to reveal any evidence that NLAG repudiated Miletello’s authority to sign the documents at issue, nor has it made a claim that Miletello acted outside the scope of his authority.
Miletello, as owner and representative of NLAG, had agency authority to execute the two promissory notes and guaranty agreement on behalf of NLAG. NLAG’s operating agreement expressly permits Griffis, as manager, to delegate his duties to any person “for the transaction of the business of the company.” The designation does not have to be made in writing. Again, the record does not reveal any indication that NLAG repudiated Miletello’s authority to execute the documents in question.
The trial court found, and the record supports, that Miletello had the agency authority to execute the documents at issue. Therefore, trial court did not err in dismissing him from this action, since he cannot be held liable in |nhis personal capacity. For these reasons, assignments of error one and three are without merit.

Miletello’s Motion for Summary Judgment

The Rodgers contend in the second assignment of error that the trial court erred in granting Miletello’s motion for summary judgment and holding that Miletello was not personally liable for his execution of the promissory notes and the guaranty agreement, when the evidence showed that Scott Griffis, the designated manager of NLAG, solely had authority to bind NLAG.
As discussed in the previous assignment, Scott Griffis, NLAG’s manager, was responsible for managing the business affairs of the company. However, the NLAG Operating Agreement expressly allows Grif-fis, as manager the option of delegating his duties to any person “for the transaction of the business of the company.” The Rodgers incorrectly assumed that only one person, Griffis, could have been authorized to execute the NLAG documents.
In this instance, Miletello was designated to execute the promissory notes and guaranty agreement due to Griffis’s unavailability. NLAG never repudiated Mile-tello’s authority to sign the documents at issue. He acted solely as a representative or owner of NLAG, and did not assume any Impersonal liability for the corporate debts of NLAG. This assignment of error bears no merit.
CONCLUSION
For the foregoing reasons, the trial court’s judgment granting Miletello’s mo *294 tion for summary judgment, denying the Rodgers’ motion for summary judgment, and dismissing Miletello from the action is hereby affirmed. Cost of this appeal are assessed to the plaintiffs, Randall and Pamela Rodgers.
AFFIRMED.