Dayna SIMONEAUX

v.

**M. Carmen BROWN, et al**

**No. CIV.A.04–715–FJP–SCR.**

United States District Court, M.D. Louisiana.

Nov. 7, 2005.

Garth Jonathan Ridge, Baton Rouge, LA, for Dayna Simoneaux.

Stephen M. Irving, Baton Rouge, LA, for M. Carmen Brown, et al.

### *RULING*

POLOZOLA, District Judge.

Plaintiff Dayna Simoneaux filed this suit under the Fair Credit Reporting Act ("FCRA"), alleging violations of 15 U.S.C. § 1681n, for willful non-compliance; § 1681o, for negligence non-compliance; and § 1681q, for obtaining consumer information under false pretenses.

This matter is now before the Court on the motion of M. Carmen Brown and City Financial Corporation ("City Financial") for summary judgment.[1] The Court heard oral argument in the matter on November 3, 2005. After considering the arguments of counsel during oral argument and the briefs and entire record in this case, the Court finds that defendants' motion for summary judgment should be granted.

### *Background*

Plaintiff's husband, Vernon Simoneaux, applied for loans from his employer, The Dollar Bill, using fictitious names and creating several fictitious accounts. Vernon Simoneaux was charged with and pled guilty to criminal charges arising from these actions. As part of his sentence, the

---

1. Rec. Doc. No. 8.

judge issued an order of restitution requiring Vernon Simoneaux to pay back the funds stolen. The assets of The Dollar Bill, including its trade name and the judgment and restitution order, were transferred to City Financial Holding Corp., a defendant herein. Thereafter, City Financial sought a credit report in connection with its efforts to collect the debt Vernon Simoneaux owed to it. Plaintiff alleges that the name of Simoneaux's wife, Dayna Simoneaux, who is the plaintiff herein, may have been included in the credit searches conducted on Vernon Simoneaux on two occasions.

Defendants argue that because the debt of Vernon Simoneaux is a community debt under Louisiana law, there was nothing improper in obtaining a joint credit report on the Simoneauxs since Dayna Simoneaux's assets could also be used to satisfy the debt of Vernon Simoneaux under the law. Thus, plaintiff argues that its actions constituted a permissible purpose within the meaning of the FCRA.

Plaintiff does not dispute that Vernon Simoneaux had a criminal restitution order issued against him requiring him to reimburse City Financial for the sums he embezzled. Plaintiff contends that her husband's debt is not a community obligation because it was an "intentional wrong" under La. C.C. art. 2363.

The plaintiff argues that the criminal order of restitution owed by her husband is not a community debt under the Louisiana Civil Code. Thus, plaintiff contends that her credit report has no bearing whatsoever on her husband's ability to pay the court ordered restitution for the crime he has committed. Finally, plaintiff states that the defendants' inquiry into her credit

was not a "permissible purpose" under the FCRA.

## I. Louisiana Community Property Law—Vernon Simoneaux's debt is a community obligation under the law.

To fully understand the basis for the Court's conclusion that the debt was a community obligation, it is necessary for the Court to set forth a detailed analysis of the applicable articles of the Louisiana Civil Code.

■ It is well-settled in Louisiana that community property can be seized to pay for the debts of either spouse.[2] This rule is applicable even when the community regime has ended. Under Article 2345 and Article 2357, the creditor of a spouse has the same property available to satisfy the debt after the community regime has ended as the creditor had during its existence. Thus, all assets of the community, including the interest of the non-debtor spouse, as well as the separate property of the spouse who incurred the debt, are available to satisfy the debt owed.[3] These findings are fully supported by the applicable articles set forth in the Louisiana Civil Code.

Thus, La. C.C. art. 2361 provides:

Except as provided in Article 2363, all obligations incurred by a spouse during the existence of the community property regime are **presumed** to be community obligations.[4]

La. C.C. art. 2363 provides:

A separate obligation of a spouse is one incurred by that spouse prior to the establishment or after the termination of a community regime, or one incurred during the existence of the community

---

2. La. C.C. art. 2345; *see Bankston v. Alexandria Neurosurgical Clinic,* 659 So.2d 507 (1994).

3. *Lawson v. Lawson,* 535 So.2d 851 (1988).

4. Emphasis added.

property regime **though not for the common interest of the spouses or for the interest of the other spouse.** An obligation incurred after termination of a community property regime, except an obligation incurred for attorney's fees and costs under Article 2362.1, is a separate obligation

An obligation resulting from an **intentional wrong not perpetrated for the benefit of the community, or an obligation incurred for the separate property of a spouse to the extent that it does not benefit the community, the family, or the other spouse,** is likewise a separate obligation.[5]

▆▆▆ There is a presumption under Louisiana law that all obligations incurred by a spouse during the existence of the community property regime are debts of the community. However, this presumption is rebuttable.[6] In order to rebut this presumption, a spouse who seeks to avoid paying the debt must show that the debt in question was not incurred for the benefit of the community. In determining whether the debt in question was incurred for the benefit of the community, it is necessary for the Court to examine the uses to which the borrowed money was put.[7] The proof needed to establish the purpose of the debt is "more traditionally stated as 'clear and convincing'."[8]

The Court now turns to an analysis of the Louisiana jurisprudence. While each case is fact intensive, the key question the Court must resolve is whether the debt in question was incurred for the benefit of the community.

If the plaintiff fails to rebut the presumption, the presumption that the debt is a community debt will stand as in the case of *Sims v. Sims.*[9] In *Sims,* a wife petitioned to partition the community of acquits and gains accumulated by her and her former husband. Prior to the parties' separation, the defendant husband had been charged with homicide. The plaintiff accompanied her then-husband to hire an attorney to defend him against this accusation. A jury acquitted the defendant of the homicide but the husband's legal fees totaled $45,000. The issue presented was whether the resulting debt for the attorney's fees was a separate or community obligation.

The Louisiana Second Circuit noted that, "once it has been shown that a debt arose during the community's existence, the presumption of Article 2361 may be rebutted only through the presentation of facts proving that indebtedness instead to be a separate obligation as defined under La. C.C. Art. 2363."[10] The court then noted that at the trial, plaintiff's attorney had not questioned the defendant-husband regarding this alleged offense, neither had she elicited additional information from any other source or through the wife's own testimony. Thus, the court found that, "the record is completely devoid of any evidence surmounting the presumption

---

5. Emphasis added.

6. *Keene v. Reggie,* 701 So.2d 720, 728 (1997) (*See Krielow v. Krielow,* 622 So.2d 732 (1993), *writ granted,* 631 So.2d 432 (1994) *reversed on other grounds,* 635 So.2d 180 (1994).)

7. *Id.,* at 729, *citing McConathy v. McConathy,* 632 So.2d 1200 (1994); and *Ledet v. Ledet,* 496 So.2d 381 (1986). (Emphasis added).

8. *Id.,quoting Salley v. Salley,* 647 So.2d 1164 (La.App. 3 Cir.1994).

9. 677 So.2d 663 (1996).

10. *Id.,* at 665 (*See Succession of LeBlanc,* 577 So.2d 105 (1991); *Allbritton v. Allbritton,* 561 So.2d 125 (1990), *writs denied,* 565 So.2d 445 (La.1990), 565 So.2d 454 (La.1990)).

that the defense-related fees resulted in a community obligation."[11]

The appellate court also found that it was not necessary for the husband to establish he was on a community mission, stating that the burden of proof was placed on the wrong party by the lower court. Once the husband established that the debt arose during the existence of the community, the Second Circuit found that he benefited from the presumption in La. C.C. art. 2361 without the necessity to present further evidence. "It then became incumbent on Janice to show, under La. C.C. Art. 2363, that her former spouse committed an 'intentional wrong' not for the benefit of the community.[12] ... Because appellee glaringly failed in that regard, the trial court erred in classifying the attorney's fees as the husband's separate debt."[13]

In *Wichser v. Major*,[14] the Louisiana Fourth Circuit held that La. C.C. art. 2363 applied to a husband who was found civilly liable for assault and battery. The assault and battery arose out of a business deal which was not successful. The court found that assault and battery are "intentional acts," and the intentional wrongs committed by the husband in this case were "not perpetrated for the benefit of the community." Thus, the Court found that the debt was a separate obligation.[15]

In *Williams v. Williams*,[16] a deceased husband's parents sued his widow to recover $10,000 the parents borrowed to pay restitution to a victim who was stabbed by the husband who thought the victim was responsible for his brother's suicide. After the husband was ordered to make criminal restitution in the amount of $10,000 to the victim, his parents agreed to borrow $10,000 to pay off the restitution debt. While there was no written agreement between the parties regarding the repayment of the loan, the husband made five payments on the loan to his parents with community funds before he died. Thereafter, the parents sued the widow for repayment of the balance due on the $10,000 loan.[17]

The Louisiana Fifth Circuit found that, "[t]he record in this case clearly indicates that the obligation, for which the $10,000 loan was made, resulted from the intentional wrong of defendant's spouse, which was not perpetrated for the benefit of the community.... The incident had nothing to do with the community."[18] The court further held that, "[t]he obligation incurred, to redress a spouse's intentional tort not perpetrated for the benefit of the community, is that spouse's separate obligation."[19]

█ It is clear that in the above two cases, the spouse rebutted the presumption that the debt was for the benefit of the community by presenting clear and convincing evidence. Such is not the case in the matter now pending before this Court.

█ Since Dayna Simoneaux has failed to present evidence showing what the embezzled funds were used for, the presumption of a community obligation applies un-

---

11. *Id.*

12. *Id., citing Allbritton, supra.*

13. *Id.,citing Succession of LeBlanc, supra.* & *Allbritton, supra.* (Further citations omitted).

14. 694 So.2d 924 (1995).

15. *Id.,* at 928.

16. 655 So.2d 405 (1995).

17. *Id.,* at 406.

18. *Id.,* at 408.

19. *Id.*

der the facts of this case. The burden is on Dayna Simoneaux to rebut the presumption that the debt created by the intentional wrong of her husband did not "benefit the community, the family, or the other spouse." Even assuming that the plaintiff can now rebut the presumption, the Court does not believe it would be in the interest of justice to impose on the defendants such knowledge that was not known and could not have been known to them at the time the credit report was requested and obtained.

Since the Court has determined that the debt was a community obligation, it is not necessary for the Court to determine if the defendants violated the FCRA. However, the Court will also determine in the alternative whether the FCRA was violated in the event the Court is in error in holding that the plaintiff failed to rebut the presumption that the debt was a community obligation.

## II. Violations of the Fair Credit Reporting Act ("FCRA")

Even if the Court finds that the husband's debt is a separate obligation under La. C.C. art. 2363, the inquiry does not end for the purposes of plaintiff's claims under the FCRA. The plaintiff has alleged willful noncompliance with the Act, negligent noncompliance with the Act, and obtaining consumer information under false pretenses. Each of these claims will be discussed separately.

### A. § 1681n Civil Liability for Willful Noncompliance

Section 1681n is not a strict liability statute. As one district court noted, "if Congress had wished to create a strict liability statute, no purpose would have been served by retaining § 1681o, which imposes civil liability for negligently failing to comply with the FCRA's requirements." [20] Thus, "in order to recover for a violation, Plaintiff must demonstrate either willful or knowing conduct under § 1681n, or negligent conduct under § 1681o." [21]

For a violation to be "willful," thereby justifying an award of punitive damages, "a defendant's *course of conduct* must exhibit 'conscious disregard' for or entail 'deliberate and purposeful' actions taken against a plaintiff's rights." [22] Although the term "willful" is not defined by the Act, "it is clear that neither malice nor evil motive need be established for a finding of 'willfulness' to be made." [23] Thus, " 'willful' under the Act is demonstrated by a showing of 'knowingly and intentionally committed an act in conscious disregard for the rights of others.' " [24]

### B. § 1681o Civil Liability for Negligent Noncompliance

The Fifth Circuit has found that " 'whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the re-

---

20. *Thibodeaux v. Rupers,* 196 F.Supp.2d 585, 590 (S.D.Ohio 2001).

21. *Id.,* at 591.

22. *White v. Imperial Adjustment Corporation,* 2002 WL 1809084, *6 (E.D.La. Aug, 6, 2002) (Emphasis in original).

23. *Wiggins v. Equifax Services, Inc.,* 848 F.Supp. 213, 219 (D.D.C.1993) (*See Stevenson*

*v. TRW, Inc.,* 987 F.2d 288, 294 (5th Cir.1993) (*citing Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143, 151 (5th Cir.1983))).

24. *Id.,* at 219 (*See Stevenson,* 987 F.2d at 293 (*citing Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986), *cert. denied,* 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987))).

port relates.' " [25] Furthermore, "[t]he adequacy of the consumer reporting agency's procedures is judged according to what a reasonably prudent person would do under the circumstances." [26] The FCRA also imposes a duty upon reporting agencies to reinvestigate and to delete information found to be inaccurate or no longer verifiable once the consumer has protested the inclusion of the material.[27]

Plaintiff has alleged that the defendants had an affirmative duty "to follow reasonable procedures, including those that would prevent the impermissible accessing of consumer report." [28] Plaintiff further alleges that "[r]easonable procedures for users such as Dollar Bill include restricting the ability of its agents to obtain consumer reports on consumers for any impermissible purpose." [29] The plaintiff has failed to present evidence that the defendants were guilty of negligent noncompliance under the facts of this case. Plaintiff has also failed to present evidence that would create a material issue of fact in dispute which would preclude the Court from granting summary judgment on this claim.

### C. § 1681q Obtaining information under false pretenses

■ A court determines whether a request for a consumer report has been made under false pretenses by looking at the permissible purposes for which consumer reports may be obtained under the Fair Credit Reporting Act.[30]

The permissible purposes for obtaining a consumer report under Section 1681b are set forth below, in pertinent part:

(a) In general

Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

(1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceeding before a Federal grand jury.

(2) In accordance with the written instructions of the consumer to whom it relates.

(3) To a person which it has reason to believe-

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by

**25.** *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir.2001), *quoting* 15 U.S.C. § 1681e(b).

**26.** *Id.*, at 368, *citing Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513 (5th Cir.1982).

**27.** *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986), *citing* 15 U.S.C. § 1681i.

**28.** *See* Plaintiff's Complaint, Rec. Doc. No. 1, ¶ 21.

**29.** *Id.*, at ¶ 22.

**30.** *Veno v. AT&T Corp.*, 297 F.Supp.2d 379 (D.Mass.2003).

law to consider an applicant's financial responsibility or status; or

(E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or

(F) otherwise has a legitimate business need for the information -

> (I) in connection with a business transaction that is initiated by the consumer; or

> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

There is jurisprudence which holds that the above section did not put any restrictions on the end-user's use of the credit report. Thus, it appears that § 1681n imposes civil liability on the user of credit information who willfully fails to comply with any requirement of the FCRA, and § 1681q imposes criminal liability on a person who obtains credit information under false pretenses. Courts generally read these two sections together, finding that "a person who [does] not have a permissible purpose for obtaining a consumer report, as defined by § 1681b, and who fail[s] to disclose such impermissible purpose, [is] found to have obtained a consumer report under false pretenses."[31]

### D. Applicable Caselaw

In *Koropoulos v. The Credit Bureau, Inc.*,[32] a suit was filed by a husband and wife alleging that a credit reporting agency violated the Fair Credit Reporting Act.

One of the claims asserted was that the defendant violated the FCRA by issuing a report on Mr. Koropoulos in response to an inquiry about Mrs. Koropoulos' credit.

The plaintiff relied on 15 U.S.C. § 1681b(3)(A), which states as follows:

> [a] consumer reporting agency may furnish a consumer report [only] . . . [t]o a person which it has reason to believe— intends to use the information in connection with a credit transaction *involving the consumer on whom the information is to be furnished* and involving the extension of credit to, or review or collection of an account of, the consumer.[33]

The court noted that the plain language of this provision seemed to prohibit the credit agency from sending a report on the husband in response to a request for a report on the wife. However, the court found that the issue was complicated by the Act's definition of a consumer report, which it noted as follows:

> any . . . communication bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used for . . . purpose authorized under 15 U.S.C. § 1681b.[34]

Based on the above definition of consumer report, the court stated, "the Act seems to allow CBI to communicate information about Mr. Koropoulos as long as it has a bearing on Mrs. Koropoulos' credit worthiness; such a communication would not violate the Act because it would consti-

---

31. *Thibodeaux v. Rupers*, 196 F.Supp.2d 585, 590 (S.D.Ohio 2001) (*see Yohay v. City of Alexandria Emp. Credit Union*, 827 F.2d 967, 971–72 (4th Cir.1987); *Hansen v. Morgan*, 582 F.2d 1214, 1219–20 (9th Cir.1978)).

32. 734 F.2d 37 (C.A.D.C.1984).

33. *Id.*, at 46. (Emphasis in original).

34. *Id.*

tute a consumer report on Mrs. Koropoulos." [35]

In *Smith v. GSH Residential Real Estate Corporation,*[36] plaintiff brought suit under the FCRA claiming that the defendant willfully requested and received a credit report from a consumer reporting agency under "false pretenses." Plaintiff's spouse had filed a lease application with GSH for a home. GSH requested and received a credit report for her, and the report stated that she was married to the plaintiff. Plaintiff claimed that the Act was violated when the defendant requested and received the credit report on him when his wife filed the lease application. The district court determined that the credit report was properly obtained and granted summary judgment in favor of GSH.[37]

The district court had relied on *Koropoulos* in determining that GSH could properly request and receive the credit report of Mr. Smith because the Smiths were married. The court noted that, "[t]he district court here reasoned that Thomas' credit report had such a bearing on Annette's lease application as to constitute a consumer report for Annette. GSH's request and receipt of Thomas' report had a permissible purpose." [38]

The court further noted that, "[u]nder 15 U.S.C. § 1681b(3)(A), a creditor may request information on an applicant's spouse in a number of circumstances." [39] The court turned to a discussion of the state law doctrine of necessaries and its application to the rental transaction involved in the case. The court ultimately held that, "[b]ecause Thomas made no showing that GSH's request and receipt of his credit report was knowing and willful, the district court's grant of summary judgment to GSH is affirmed." [40]

In *Short v. Allstate Credit Bureau,*[41] a prospective borrower and his wife sued a consumer reporting agency and other parties under the FCRA, among other federal and state laws. The case arose out of the inclusion of a non-applicant spouse's credit history on a consumer credit report for the applicant spouse. Mr. Short applied for a farm loan and submitted his application to an FSA Farm Loan Manager. In order to process the application, the loan manager contacted Mrs. Short and requested her social security number to obtain her credit history. Mrs. Short advised the loan manager not to obtain her credit history.[42]

Although Mrs. Short instructed him not to obtain her credit history, the loan manager obtained a credit report on her and considered her credit history in determining Mr. Short's loan application. Mr. Short's loan application was consequently denied based on adverse information in Mrs. Short's credit history.[43]

In their claim under the FCRA, plaintiffs argued that the inclusion of Mrs. Short's credit history on the joint credit report was impermissible under the FCRA. Allstate argued that the joint credit report was properly obtained because it

**35.** *Id.* (Citations omitted).

**36.** 935 F.2d 1287, 1991 WL 106191 (4th Cir. 1991) (unpublished).

**37.** *Id.*

**38.** *Id.,* at 935 F.2d 1287, 1991 WL 106191, *2.

**39.** *Id.*

**40.** *Id.,* at 935 F.2d 1287, 1991 WL 106191, *3.

**41.** 370 F.Supp.2d 1173 (M.D.Ala.2005).

**42.** *Id.,* at 1177.

**43.** *Id.*

was furnished with a permissible purpose, as held in *Koropoulos*,[44] that a spouse's credit report could constitute an applicant's credit report because it could "bear on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."[45]

The court further noted instances where a spouse's credit history would be relevant, stating:

[U]nder § 1681b(3)(A), a creditor may request information on an applicant's spouse in a number of circumstances. Such situations which permit creditors to request spousal information include circumstances where the spouse will use the account or be contractually liable on the account, or where the applicant is relying on the spouse's income or acting as the spouse's agent. *See* 15 U.S.C. § 1681b(3)(A). In these instances, a consumer reporting agency is permitted to furnish the spousal information because a permissible purpose to obtain the information exists. Thus, in order to hold a consumer reporting agency liable for violation of § 1681b, there must be no permissible purpose for furnishing the spousal information to the creditor. *See generally id.*[46]

Thus, the principal question before the court in *Short* was whether a permissible purpose existed to access Mrs. Short's credit history. The court found that, to the extent that plaintiff sought to recover against Allstate for furnishing the credit report to the loan manager, plaintiff's claim against Allstate was dismissed. The court noted that Allstate prepared the credit report at the request of the loan manager at FSA. Thus, if there is any entity which could face liability under the Act, it was FSA and not Allstate as § 1681d applies only to the party which requests preparation of the report, not the entity which prepared it.

In *Davis v. Asset Services*,[47] the district court for the Middle District of Louisiana addressed whether an employer could request a credit report on an employee's spouse for employment purposes. In its opinion, the court discussed whether a willful and knowing violation was committed. This discussion is relevant to the case now pending before this Court.

The court found that, "[a]lthough it is permissible for an employer or his agent to access the credit reports of employees for employment purposes, it is not permissible to obtain a credit report on a spouse of the employee for this purpose."[48] Asset Services admitted that it obtained an employment report on a non-employee. However, Asset Services argued that it had a good-faith belief that the names on list given were actual employees. Thus, Asset Services contended it did not willfully and knowingly violate the Fair Credit Reporting Act. The court found Asset Services did not have the wilful intent to violate the Act, stating:

The willfulness requirement of Section 1681n is synonymous with the requirement of intent in criminal statutes. Because willful conduct allows successful plaintiffs to collect punitive damages, this requirement has been strictly applied in cases involving the Fair Credit Reporting Act. The fact that Ochsner provided a list of names to Asset Services, and Asset Services believed these

---

44. *Supra.*

45. *See* 15 U.S.C. § 1681a(d).

46. *Id.,* at 1179–80.

47. 46 F.Supp.2d 503 (M.D.La.1998).

48. *Id.,* at 509.

names to be names of employees of Ochsner is not in dispute. This court finds that no reasonable fact finder could conclude that Asset Services had the requisite intent to willfully violate the provisions of the Fair Credit Reporting Act. Asset Services is, therefore, entitled to judgement as a matter of law.[49]

Considering the above analysis, there is no evidence in the record which rebuts the presumption that the debt incurred by Simoneaux during the existence of the community regime was a community obligation. The plaintiff has failed to present evidence to establish that the funds embezzled by her husband were not used for the benefit of the community.

■■■ Since the presumption of community assets has not been rebutted, Louisiana community property law allows a creditor to access the assets of a spouse to satisfy the debt of a creditor. Thus, plaintiff's suit against the defendants is without merit. Furthermore, even if the debt was a separate debt, the plaintiff has failed to establish that there was a violation of the FCRA. As discussed in *Davis* above, this Court finds that the defendants were in good faith relying on the presumption of a community obligation under Louisiana law, making it reasonable for the defendants to believe accessing plaintiff's credit information in a joint report was a "permissible" purpose under the Act. The Court also finds that no reasonable fact finder would conclude that the defendants had the requisite intent to wilfully violate the FCRA under the facts of this case. The actions taken by the defendants were reasonable based on the facts they were acting under

and the report did bear "on the creditworthiness, credit history, credit capacity, character, general reputation, personal characteristics or mode of living"[50] of the plaintiff and her husband. The Court also finds that the defendants were not liable for negligent noncompliance of the FCRA under the facts of this case.[51]

Therefore:

The Court finds that defendants' motion for summary judgment should be granted.[52]

Judgment shall be entered dismissed plaintiff's suit with prejudice.

### *JUDGMENT*

For written reasons assigned;

IT IS ORDERED that defendant's motion for summary judgment is granted and plaintiff's suit is dismissed with prejudice.

---

49. *Id.,* at 510.

50. 15 U.S.C. § 1681a(d).

51. Plaintiff argued in her Opposition that no business transaction was initiated by the consumer. This argument is without merit. Vernon Simoneaux's criminal actions did initiate a transaction with the defendants.

52. The Court has considered all of the contentions of the parties whether or not specifically discussed in this opinion.