**In re ALLSTATE INSURANCE COMPANY UNDERWRITING AND RATING PRACTICES LITIGATION.**

**This Memorandum Refers to: Named Plaintiffs Patty Funderburk and Cassietta Whitfield.**

**MDL No. 3:02–md–1457.**

United States District Court, M.D. Tennessee, Nashville Division.

Nov. 14, 2008.

Douglas Bowdoin, Douglas Bowdoin, P.A., Orlando, FL, Howard Finkelstein,

Finkelstein & Krinsk, LLP, San Diego, CA, Rod Bowdoin, Darby, Peele, Bowdoin & Payne, Lake City, FL, Ron Parry, Parry, Deering, Futscher & Sparks, P.S.C., Covington, KY, Terry Alan Smiljanich, James, Hoyer, Newcomer & Smiljanich, P.A., Tampa, FL, Kenneth S. Canfield, Doffermyre, Shields, Canfield, Knowles & Devine, Atlanta, GA, Charles A. McCallum, III, McCallum Law Firm, L.L.C., Vestavia Hills, AL, R. Scott Jackson, Jr., Nashville, TN, Alexander Thomas Stubbs, Office of A. Thomas Stubbs, Decatur, GA, Gordon Ball, Ball & Scott, Knoxville, TN, James C. Shah, Natalie Finkelman Bennett, Scott R. Shepherd, Shepherd, Finkelman, Miller & Shah, LLC, Media, PA, John W. Trimble, Jr., Trimble & Associates Washington Professional Campus, Turnersville, NJ, Lisa M. Mezzetti, Cohen, Milstein, Hausfeld & Toll, PLLC, Washington, DC, Thomas C. Jessee, Jessee & Jessee, Johnson City, TN, Benigno Trey & Quot Martinez, III, Martinez, Barrera & Martinez, L.L.P., Brownsville, TX, Suzanne M. Schwarz, Law Offices of Suzanne Schwarz, P.C., Harlingen, TX, David A. Szwak, Bodenheimer, Jones & Szwak, Shreveport, LA, Curtis W. Hitt, Paragould, AR, Dawn Adams Wheelahan, New Orleans, LA, for Plaintiffs.

Andrew B. Campbell, Wyatt, Tarrant & Combs, Garry K. Grooms, Stites & Harbison, PLLC, Nashville, TN, Bradford K. Burdette, Thompson, Coe, Cousins & Irons, LLP, Dallas, TX, Carl R. Nelson, Fowler, White, Boggs & Banker, P.A., Tampa, FL, Claire Shows Hancock, Wright, Lindsey & Jennings, Little Rock, AR, Jeffrey Lennard, Jennifer A. Barrett, M. Keith Moskowitz, Sonnenschein, Nath & Rosenthal, Albert E. Hartmann, Roger L. Longtin, Michael O'Neil, Peter J. Donoghue, DLA Piper US LLP, Chicago, IL, Judy Y. Barrasso, Barrasso, Usdin, Kupperman, Freeman, Sarver, LLC, Glenn Paul Orgeron, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LL, New Orleans, LA, Rene O. Oliveira, Roerig, Oliveira & Fisher, L.L.P., Brownsville, TX, Richard R. Hays, Alston & Bird LLP, Kenneth S. Canfield, Doffermyre, Shields, Canfield, Knowles & Devine, Atlanta, GA, Roger D. Higgins, Thompson, Coe, Cousins & Irons, LLP, Dallas, TX, Brian P. Brooks, O'Melveny and Myers, LLP, Washington, DC, Frederick J. Lewis, Lewis, Fisher, Henderson, Claxton & Mulroy, LLP, Memphis, TN, Tim Boe, Rose Law Firm, Little Rock, AR, for Defendants.

## MEMORANDUM

ALETA A. TRAUGER, District Judge.

Pending before the court is the defendant Allstate's Motion for Judgment on the Pleadings and to Dismiss or Strike Class Allegations. (Docket No. 838.) For the reasons discussed below, the defendant's motion will be granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 2005, plaintiff Patty Funderburk's husband, Carl, asked an Allstate agent for a quotation for homeowner's insurance with Allstate.[1] Likewise, in 2002, plaintiff Cassietta Whitfield's husband, Garnell, had asked an Allstate agent for a quotation for homeowner's insurance with Allstate. In connection with both requests, Allstate obtained a consumer report for both the husband-applicant and, without obtaining specific permission, the applicant's spouse. Allstate offered Mr.

---

1. Unless otherwise noted, the facts are drawn from the Sixth Amended Complaint ("the Complaint") (Docket No. 807) and the plaintiffs' response (Docket No. 847) to the defendant's Motion for Judgment on the Pleadings and to Dismiss or Strike Class Allegations.

Funderburk a premium that was on terms that were less than the most favorable terms offered by Allstate.[2]

The plaintiffs allege that, by obtaining their consumer reports in conjunction with their husbands' applications for home-owner's insurance, Allstate violated the Fair Credit Reporting Act (FCRA). In their Complaint, the plaintiffs state that they seek to represent a class of consumers in this litigation, *i.e.* "[r]esidents of the United States of America who on or after January 1, 1994, had their credit reports obtained by Allstate Insurance Company and Allstate Indemnity Company in connection with the application of another person for an insurance policy, and for whom Allstate Insurance Company and Allstate Indemnity Company had no permissible purpose to obtain such credit report as required by the Fair Credit Reporting Act." (Docket No. 807 at 11.) Also, in their Complaint, the plaintiffs allege that their proposed class satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23(a) and the predominance requirement of Rule 23(b)(3). (*Id.* at 12–15.) The plaintiffs allege that Allstate's FCRA violations were either willful or, alternatively, negligent.[3] (*Id.* at 17–19.)

On March 3, 2008, Allstate filed its motion for judgment on the pleadings, later clarifying that the scope of its motion was limited solely to the claims of named plaintiffs Funderbunk and Whitfield. (Docket No. 856 at 6.) Allstate primarily argues that it had a permissible purpose under the FCRA for obtaining Funderburk's and

Whitfield's consumer reports, and, therefore, it did not violate the FCRA. (Docket No. 839 at 7–8.) Allstate also moved to strike or dismiss certain class allegations as time-barred and requiring individualized proof. (*Id.* at 17–22.)

The plaintiffs respond that Allstate had no statutory purpose to utilize Funderburk's and Whitfield's consumer reports and, therefore, Allstate is not entitled to judgment on the pleadings. (Docket No. 847 at 6.) As to Allstate's motion to strike or dismiss certain class allegations, the plaintiffs argue that Allstate's challenges to the propriety of class treatment are premature and should be addressed after discovery and class certification briefing. (*Id.* at 19–23.)

## *ANALYSIS*

Plaintiffs Funderburk and Whitfield claim, on behalf of themselves and their proposed class, that defendant Allstate, in utilizing their consumer reports without a permissible purpose, violated the Fair Credit Reporting Act (FCRA) 15 U.S.C. § 1681 *et seq.* and did so either willfully or negligently. Allstate has moved for judgment on the pleadings solely as to the claims of Funderburk and Whitfield. Allstate has also moved to dismiss or to strike certain class allegations. For the reasons discussed below, Allstate is entitled to judgment on the pleadings as to the FCRA willful violation claim but not as to the FCRA negligent violation claim. Allstate's motion to dismiss or to strike certain class allegations will be denied as premature.

---

**2.** For purposes of clarity, no similar allegation is made regarding Allstate's interactions with Mr. Whitfield.

**3.** In count six of the operative Complaint, the plaintiffs claim that they are entitled to injunctive relief to protect them from Allstate's alleged FCRA violations. (Docket No. 807 at

20.) No subsequent argument regarding injunctive relief has been raised, and both sides appear to believe that this claim is no longer before the court, although the court can locate no official statement indicating that this claim for relief has been dismissed. (Docket No. 839 at 1, Docket No. 847 at 4.)

## I. Judgment on the Pleadings Standard

■ "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). For purposes of analyzing a motion for judgment on the pleadings, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg–Legacy Place,* 539 F.3d 545, 549 (6th Cir.2008) (internal citations omitted). A motion brought "pursuant to Rule 12(c) is appropriately granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (internal quotations omitted).

To survive a Rule 12(c) motion, the plaintiff's pleading must meet the requirements explained in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), which are also explored in conjunction with a defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6). *Tucker,* 539 F.3d at 550. In *Twombly,* the Court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." 127 S.Ct. at 1964–65. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (citing *Twombly,* 127 S.Ct. at 1965). Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by "blanket assertion[s]." *Twombly,* 127 S.Ct. at 1965 n. 3.

■ Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," see *E.E.O.C. v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir.2001), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964–65 (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Accordingly, to survive a motion to dismiss or a motion for judgment on the pleadings, "[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely"). With this standard in mind, the court will consider the viability of the defendant's motion.

## II. The Fair Credit Reporting Act (FCRA)

■ Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr,* 551 U.S. 47, 127 S.Ct. 2201, 2205, 167 L.Ed.2d 1045 (2007). The FCRA imposes civil liability on "any consumer reporting agency or

user" that is negligent or willful in its failure to comply with any provision of the FCRA. *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir.1998) (citing 15 U.S.C. §§ 1681n-o). Here, the FCRA provision at issue is § 1681b, which provides a list of the appropriate purposes for which a user of consumer data, such as Allstate, may utilize an individual's "consumer report." 15 U.S.C. § 1681b(a)(3). A "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit spending, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

■ The parties appear in agreement that the § 1681b "purpose" relevant to this case is the provision that allows an entity, such as Allstate, to utilize a consumer report "in connection with the underwriting of insurance involving the consumer." 15 U.S.C. § 1681b(a)(3)(C). There is no question that an insurer may obtain the consumer report of the insurance applicant in response to the applicant's request for an insurance quote. *Wilting v. Progressive County Mut. Ins. Co.*, 227 F.3d 474, 476 (5th Cir.2000); *Scharpf v. AIG Marketing, Inc.*, 242 F.Supp.2d 455, 459 (W.D.Ky.2003). The question raised by this case is whether the insurer may obtain the consumer report of the applicant's spouse.[4] Neither side has pointed the court to any case law directly answering this question, and the court has not been able to locate any case law on this point either. Not surprisingly, both sides take very different views on this question.

In asserting that it is not a violation of the FCRA to utilize, without permission, the consumer report of an insurance applicant's spouse, Allstate argues that an application for homeowner's insurance by one spouse necessarily "involves" two consumers—the applicant spouse and the non-applicant spouse. (Docket No. 839 at 8–10.) Therefore, Allstate argues, the law should draw no distinction between the right to obtain information regarding the individual who formally applied for the insurance and that individual's spouse, because, for all practical purposes, they are both applicants, both "consumers" for purposes of the statute, and, under the FCRA, both subject to having an insurer obtain their consumer reports. (*Id.*)

Allstate also relies on a series of cases that interpret a separate provision of the FCRA, *i.e.*, the provision that states that it is permissible for a company to utilize an individual's consumer report to determine whether to extend credit to that individual. 15 U.S.C. § 1681b(a)(3)(A). Applying the FCRA's broad definition of a consumer report, these cases hold that, because a spouse's consumer report bears on the applicant's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living," a spouse's consumer report necessarily becomes part of a "consumer report" for the applicant and part of the materials a credit-granting entity may per-

4. While the proposed class definition would encompass many more people than simply spouses of applicants, Allstate has explicitly stated that its "motion is directed solely to the named plaintiffs and their allegations—which are that their husbands sought homeowners insurance for the plaintiffs' own homes." (Docket No. 856 at 6.)

missibly review in conjunction with the applicant's request for credit. (Docket No. 839 at 9 citing *Smith v. GSH Residential Real Estate Corp.*, 935 F.2d 1287, No. 90–1166, 1991 WL 106191, at *2 (4th Cir.1991) (unpublished); *Simoneaux v. Brown*, 403 F.Supp.2d 526, 537 (M.D.La.2005); *Koropoulos v. The Credit Bureau Inc.*, 734 F.2d 37, 46–47 (D.C.Cir.1984)). As discussed below, these cases disagree with Allstate's notion that an application for credit (or insurance) really involves two consumers—the applicant and the non-applicant spouse.

The plaintiffs counter with a different interpretation of the statute and different case law. The plaintiffs argue that, for purposes of this FCRA provision, "the consumer" must *only* refer to the consumer who has applied for insurance, not any consumer potentially affected by the insurance. (Docket No. 847 at 10.) The plaintiffs argue that, unless the provision is so limited, "an insurer [would be] entitled to look at the credit report of any other person without further authorization so long as the report is accessed in connection with" the insurance quote request. (*Id.*) The plaintiffs argue that Allstate's reading would severely limit consumer protections provided by the FCRA. (*Id.*)

The plaintiffs also cite some cases that interpret a separate provision of the FCRA, *i.e.*, the provision that states that it is permissible for a company to utilize an individual's consumer report to determine whether to extend employment to that individual. 15 U.S.C. § 1681b(a)(3)(B). These cases hold that it is not permissible for an employer to obtain a consumer report for a potential employee's spouse. (Docket No. 847 at 9 citing *Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1370 (10th Cir.1987); *Davis v. Asset Servs.*, 46 F.Supp.2d 503, 509 (M.D.La. 1998)). These cases do not discuss the import of the broad definition of "consum-

er report." With this basic understanding of the arguments and the law, the court will turn to considering each of the plaintiffs' FCRA claims at issue, which require substantially different analysis.

## A. Willful Violation of the FCRA

■ Allstate is entitled to judgment on the pleadings on Funderburk's and Whitfield's FCRA willful violation claim. In arguing that it is not be liable for a willful violation, Allstate relies on the Supreme Court's recent decision in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), which appears to be on point. In *Safeco*, the Court held that if a company's stated interpretation of the FCRA was "objectively reasonable," a FCRA willful violation claim would not be tenable, no matter evidence of subjective bad faith. *Id.* at 2216. The Court noted that, where the statutory text is "less than pellucid" and there is a "dearth of guidance" such that "more than one reasonable interpretation" of the statute exists, "it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator." *Id.* at 2215–16.

Under *Safeco*, Allstate's position as to how 15 U.S.C. § 1681b(a)(3)(C) should be interpreted is "objectively reasonable." As demonstrated above, the positions offered by both the plaintiffs and Allstate are reasonable interpretations of somewhat "less than pellucid" statutory text. As to Allstate, in the homeowner's insurance context, it is certainly not unreasonable to construe the term "involving the consumer" to extend to matters relating to the insurance applicant's spouse. Furthermore, as Allstate points out, there appears to be no case law or regulatory guidance that would directly contradict its interpretation. (Docket No. 839 at 5.)

Indicating the strength of Allstate's argument here, the plaintiffs respond by drawing a series of unpersuasive distinctions between this case and *Safeco,* including (1) that this case does not involve adverse action notices and *Safeco* did; (2) that the defendant's interpretation in *Safeco* had additional credibility because the district court agreed with that interpretation before the case went to the Supreme Court; and (3) that, here, the plaintiffs have alleged a knowing, in addition to a reckless, FCRA violation. (Docket No. 847 at 15–16.) All of these distinctions strike the court as without substance and certainly unconnected to the rationale underlying the *Safeco* decision.[5]

The plaintiffs also offer a bevy of non-controlling case law in support of their view that rejecting a FCRA willful violation claim at this stage of the proceedings is inappropriate. (Docket No. 847 at 17.) These cases merely stand for the proposition that, after *Safeco,* there still exist many cases in which the FCRA provision at issue is not subject to more than one reasonable interpretation or other factual issues preclude an early-stage rejection of the FCRA willful violation claim. The existence of those cases, all of which involve completely different statutory text and fac-

tual allegations, does not influence the result here. Rather, this case falls directly within the scope of *Safeco.* In this case, statutory text with "less than pellucid" language is plainly capable of the defendant's reasonable interpretation, and the defendant had little to no statutory, judicial or regulatory guidance to assist it in understanding the statutory language. In this situation, *Safeco* teaches, rejecting the FCRA willful violation claim is proper.[6]

### B. Negligent Violation of the FCRA

■ The protections afforded by *Safeco* aside, Allstate asserts that its conduct did not violate the FCRA. As noted above, Allstate's primary argument is that, when one spouse applies for homeowner's insurance, both spouses are really the consumer of that insurance such that Allstate, in utilizing the plaintiffs' consumer reports, "use[d] the information in connection with the underwriting of insurance involving the consumer." (Docket No. 839 at 8–10.)

While, as discussed above, this is not an unreasonable interpretation of this statute, Allstate's view finds little support in the related case law cited by Allstate that deals with credit applications. For example, in *GSH Residential Real Estate Corp.,*

---

5. As to the plaintiffs' last distinction, the Supreme Court explicitly stated that subjective bad faith was not relevant in light of an objectively reasonable interpretation of the FCRA provision whether the defendant was alleged to have acted "knowingly or recklessly." *Safeco,* 127 S.Ct. at 2216.

6. The plaintiffs argue that Allstate clearly violated the plain meaning of the FCRA because of a FCRA provision that states that, if an "insurance transaction" is not "initiated" by the consumer, the consumer must authorize the credit reporting agency to release its consumer report to the insurance company before the consumer report can be released. (Docket No. 847 at 7 citing 15 U.S.C. § 1681b(c)(1)). Allstate convincingly argues that this provision, when read in full and in

conjunction with the statutory history, deals with "pre-screening" situations, in which no consumer has initiated the transaction with the insurance company, which is obviously not the case here. (Docket No. 856 at 10–11 citing Report of the Senate Committee on Banking, Housing, and Urban Affairs to Accompany S. 650, 104th Cong. 1st Sess., Report 104–185 (1995) at 33, which states that the term "insurance transaction that is not initiated by the consumer ... describe[s] prescreening transactions.") Additionally, this court could locate no case that applies this statutory provision in the manner advocated by the plaintiffs, with the vast body of the citations arising in the "pre-screening" context.

the court noted that the "plain language of the provision, that a consumer report may be furnished in connection with a credit transaction involving the consumer on whom the information is to be furnished, seems to prohibit obtaining spousal credit reports." 1991 WL 106191, at *2. Likewise, in *Koropoulos*, the D.C. Circuit noted that, as to this same provision, "the plain language of this provision seems to prohibit [the defendant] from sending a report on Mr. Koropoulos in response to a request for a report on Mrs. Koropoulos." 734 F.2d at 46. *Simoneaux* relied on the reasoning of *GSH* and *Koropoulos*. 403 F.Supp.2d at 536–37. Rather, all three cases found that the use of the spouse's consumer report was permissible only because the spouse's consumer report bore on the applicant's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" such that the spouse's consumer report was part of the applicant's consumer report, and, therefore, part of the materials that could be reviewed in conjunction with the applicant's request for credit. *See id.*

The relevant statutory text in the "insurance" provision is similar to the "credit" provision, with both provisions focusing on *"the* consumer," making no allowance for anyone associated with *the* consumer and seemingly prohibiting obtaining the consumer report of anyone but the insurance applicant. The issue, therefore, is whether the court should follow the *Koropoulos* line of cases and find that the expansive definition of "consumer report" permits Allstate to utilize the consumer report of the applicant's spouse because that report bears on the "credit worthiness, credit standing, credit capacity,

character, general reputation, personal characteristics, or mode of living" of the insurance applicant, or whether the court should follow the *Zamora* mini-line of cases provided by the plaintiff, which, as discussed above, arise in the employment context and ignore the broad definition of "consumer report."

The court is reluctant to embrace an expansive reading of *Koropoulos* and its progeny, which would take the broad definition of "consumer report" and use it as something of a sword against the consumer. The plaintiffs' argument that an overly expansive interpretation raises significant concerns about individual privacy and overreaching by companies such as Allstate is not lost on the court. (Docket No. 847 at 11.) That said, to simply ignore the exceedingly broad definition of consumer report, as the *Zamora* line of cases do, is not any more satisfying. Ultimately, the best reconciliation between the statutory text and the interests of the statute is to carefully consider, in each case, whether, based on the facts presented, the consumer report of the non-applicant bears on the applicant's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" such that the consumer report of the non-applicant can be fairly considered part of the applicant's consumer report.[7]

Here, based on the operative Complaint, a *per se* conclusion that the consumer report of the spouse bears on the "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" of the insurance-applicant husband strikes the court as inappropriate. The Complaint only states that, as to Funderburk and

---

7. The development of the factual record was undoubtedly important in both the *Koropoulos* and *Zamora* lines of cases, none of which was decided prior to the summary judgment stage.

Whitfield, the husband asked an Allstate agent for a homeowner's insurance quote, and the agent, in response, obtained the consumer reports for both the applicant and his spouse. (Docket No. 807 at 7.) In many circumstances, the consumer report of the applicant's spouse will bear on the spouse's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" and, therefore, would be part of the applicant's "consumer report." But here, without any supporting facts, application of that general rule would require the court to make an inference that is not sufficiently supported by the Complaint.[8]

Allstate offers a variety of other bases for granting its motion on the FCRA negligent violation claim, none of which is convincing. First, Allstate argues that, because it "intended" to use Funderburk's and Whitfield's consumer reports in the underwriting of insurance, it could not have violated the FCRA because 15 U.S.C. § 1681b(a)(3)(C) states that "any consumer reporting agency may furnish a consumer report ... [t]o a person which it has reason to believe ... intends to use the information in connection with the underwriting of insurance involving the consumer." (Docket No. 839 10–11.) This argument, and the single case that Allstate uses in support of it, *i.e., Trikas v. Universal Card Servs. Corp.,* 351 F.Supp.2d 37, 42 (E.D.N.Y.2005), offers an untenable view. The "intent" provision plainly concerns the mind set of the consumer reporting agency, *i.e.,* a consumer reporting agency may

furnish consumer data to an entity such as Allstate so long as that agency believes Allstate "intends" to use the information for a permissible purpose. *See* 15 U.S.C. § 1681b(a)(3)(C). Whether Allstate actually uses the information for that permissible purpose is another question. *Zamora,* 811 F.2d at 1370 (finding FCRA violation where the user of consumer data intended to use improper information [applicant spouse's consumer report] in conjunction with a permissible purpose [applicant's employment request] ). The court declines to adopt Allstate's interpretation of "intent" here.

Allstate also makes an argument from its business perspective, arguing that to appropriately insure risk it needs to be able to access the background of every tenant of the insured property. Allstate argues that "an insurer cannot be limited to obtaining consumer reports of only the household resident who contacts an insurance agent or insurance company to insure the home and not also the other adults living in the home who necessarily effect the risk being insured, including a spouse who may own the home." (Docket No. 839 at 14.) This policy-based argument has little relevance to the matter before the court, which is whether Funderburk's and Whitfield's consumer reports bore on the "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" of their applicant husbands. That is a question that needs more factual develop-

---

8. To advance its argument, Allstate assumes facts about the plaintiffs and their husbands that are simply not in evidence. For example, in its motion, Allstate argues that the language of 15 U.S.C. § 1681b(a)(3)(C) "permits an insurer to obtain the consumer report on an individual who resides in a home that the insurer has been asked to insure and who necessarily will be covered by the insurance policy if it is issued." (Docket No. 839 at 10.)

Allstate goes on to comment that "[t]his is precisely the scenario described in the Complaint." (*Id.*) In fact, the operative Complaint only states that the plaintiffs' husbands requested homeowner's insurance and Allstate obtained the plaintiffs' consumer reports. (Docket No. 807 at 7.) The operative Complaint does not reveal, for example, whether the residence is jointly owned or whether the mortgage is a joint liability of the couple.

ment, and a question that is not influenced by the broader, business-related concerns of Allstate.[9]

■ Finally, Allstate argues that Funderburk and Whitfield cannot demonstrate damages as required to maintain a FCRA negligent violation claim. (Docket No. 839 at 15.) Allstate argues that the plaintiffs have only offered a "conclusory statement" that they suffered damages based on Allstate's policy but "no cognizable damage theory." (*Id.* at 16.) The court disagrees. In the Complaint, the plaintiffs allege that they suffered damages, and, in briefing, they have expounded on that statement by stating that they have been injured because they lost points on their credit scores due to Allstate's credit report inquiries and because they had their privacy violated. (Docket No. 847 at 18.) While Allstate argues that the plaintiffs should be precluded from expounding on their general damages allegations in their response brief, Allstate fails to cite any case law directly supporting that view. Instead, Allstate cites a series of cases that either only deal with making new arguments at the appellate level (*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir.2006)) or deal with making new core allegations in the response brief. *Jocham v. Tuscola County*, 239 F.Supp.2d 714, 732 (E.D.Mich.2003); *Youmans v. Lowe's Home Ctrs., Inc.*, 2005 WL 1047293, *2 (E.D.Mich. Apr. 28, 2005).

In sum, because a greater factual record is needed, Allstate is not entitled to judgment on the pleadings as to Funderburk's and Whitfield's FCRA negligent violation claim.

## C. Class Claims

Allstate also alleges two bases for dismissing or striking portions of the plaintiffs' class claims. First, Allstate points out that the applicable statute of limitations for the FCRA claims at issue is two years, the earliest filed case in this MDL proceeding was filed in 2000, and yet the plaintiffs propose their class period begin on January 1, 1994. (Docket No. 839 at 17–18.) Allstate, therefore, argues that "no claims arising before September 1998 can be maintained in this action ... [and] since [the proposed class] seeks to include claims arising as far back as January 1994, it includes time-barred claims and should be stricken." (*Id.* at 18–19.) Second, Allstate argues that, as to the FCRA negligent violation claim, each proposed class member will have to demonstrate his or her own damages, and, therefore, individualized issues will predominate, making class treatment improper. (*Id.* at 19–22.)

■ As to the first point, the plaintiffs do not challenge that some potential class members' claims may be time barred, but, the plaintiffs argue, the class certification process is the appropriate manner to deal with that issue. (Docket No. 847 at 19–20.) Allstate replies that where claims are "indisputably barred by the statute of limitations" they should be stricken forthwith, without waiting for class certification proceedings. (Docket No. 856 at 18.) Allstate cites *Sample v. Aldi* for this proposition, which involved a similar situation, but the court only instructed the plaintiffs that the "proposed class must be limited to

---

**9.** Similarly, Allstate weakly argues that an "inference" of agency should be drawn such that "it may be reasonable to presume that the husband, who seeks out and has authority to purchase the insurance, is acting as the agent of his wife for purposes of this insurance underwriting transaction, particularly where both wife and husband will receive the same benefits under the homeowners insurance policy." (Docket No. 839 at 13.) Plainly, this argument relies on numerous inferences that are not supported by the simple allegation in the Complaint, and, therefore, this argument is not tenable at this stage.

those individuals who could have filed claims within the relevant limitations period." 1994 WL 48780, *4 (N.D.Ill. Feb. 15, 1994). The court provides the same obvious instruction here.

 As to the second point, it is clear that Allstate is challenging the propriety of class treatment here, something which is generally done after a motion for class certification has been filed. Allstate recognizes this but asserts that, "where a complaint fails to plead the minimum facts necessary to establish the class action prerequisites, courts may appropriately strike or dismiss the class action allegations—even at the pleadings stage." (Docket No. 839 at 19.) Allstate goes on to cite a series of non-controlling cases standing for the proposition that, where extensive briefing has been done, or, where the complaint makes it facially obvious that class treatment is inappropriate or the class will never be readily ascertainable, the court may strike the class allegations prior to class certification proceedings. (*Id.* at 19–20.) Allstate contends that, because each proposed class member's FCRA negligent violation claim will require individualized proof of damages, the court should go ahead and strike the class allegations relating to that claim. (*Id.* at 20–22.)

For their part, the plaintiffs respond with their own batch of non-controlling case law that indicates that, so long as the complaint addresses each element of Rule 23 and there is not a clear, facial deficiency with the proposed class, a motion to strike class allegations represents a premature attempt to undermine the class certification process outlined in Rule 23 by denying the plaintiff a chance to conduct discovery and mold her class allegations to what discovery reveals. (Docket No. 847 at 20.) The court is inclined to side with the plaintiffs. Unlike in the cases cited by Allstate in support of its position on this point,

there has not been class discovery here nor extensive briefing on class issues. Further, in their Complaint, the plaintiffs offer a thorough description of why their proposed class meets the requirements of Rule 23(a) and Rule 23(b)(3). (Docket No. 807 at 10–15.) Therefore, the plaintiffs are entitled, based on their showing to this point, to develop this case and seek class certification based on developments in discovery.

## CONCLUSION

For the reasons discussed above, Allstate's Motion for Judgment on the Pleadings and to Dismiss or Strike Class Allegations will be granted in part and denied in part.

An appropriate order will enter.