415 So.2d 295 (1982)
Walter R. ROARK, Plaintiff-Appellant,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al., Defendants-Appellees.
No. 14851.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1982.
Writ Denied June 11, 1982.
*296 Law Offices of Bobby L. Culpepper by Jimmy C. Teat, Jonesboro, for plaintiff-appellant.
Hayes, Harkey, Smith & Cascio by Haynes L. Harkey, Jr., Monroe, for defendants-appellees.
*297 Before PRICE, MARVIN and NORRIS, JJ.
PRICE, Judge.
Plaintiff, Walter R. Roark, instituted this suit to recover damages for a staph infection allegedly contracted while he was a patient at Glenwood Hospital. Defendants are Glenwood Hospital and St. Paul Fire and Marine Insurance Company, the hospital's liability insurer. After a trial on the merits, the court rejected plaintiff's demands and rendered judgment in favor of defendants. We affirm.
Plaintiff, complaining of lower back pain, was admitted to Glenwood Hospital on September 27, 1979. On October 5, 1979, a laminectomy was performed on plaintiff by Dr. R. Greer. After a seemingly uneventful recovery, plaintiff was discharged from the hospital on October 11, 1979. On the afternoon of October 12, 1979, plaintiff began to experience severe pain and he developed a high fever. After consultation with Dr. Greer, plaintiff returned to Glenwood Hospital, where it was ultimately discovered that a bacterial infection, "staphylococcus aureus," had invaded the surgical site.
Plaintiff was hospitalized at Glenwood until November 16, 1979, when he was transferred to St. Francis Medical Center for further therapy. Plaintiff was discharged from St. Francis on December 8, 1979, and continued under Dr. Greer's care until June 30, 1980.
Plaintiff filed this suit on August 4, 1980, alleging that the hospital was negligent in failing to meet required standards of care as to protection against infection and for failure to properly diagnose and treat plaintiff for the infection after he contracted it. Plaintiff also alleged the applicability of the doctrine of res ipsa loquitur, and that the hospital was strictly liable under La.C.C. Art. 2317.
Evidence introduced at trial shows plaintiff was given a shower with antiseptic soap, and that the surgical site was scrubbed with antiseptics prior to surgery. The standard procedures employed by the hospital to establish the sterility of the supplies, instruments, and environment were also detailed. The evidence shows that the procedures employed meet or exceed national standards.
The deposition of Dr. Greer was admitted into evidence at trial. He testified that a staph infection is the most common infection after surgery. By his estimate, approximately five percent of all surgical cases will develop some sort of infection regardless of all precautions being followed. Dr. Greer was fairly certain that the staph bacteria invaded plaintiff's wound while he was in the hospital. However, in the doctor's opinion it was impossible to say where the bacteria originated since certain people are carriers of staph. In fact, it was highly possible that plaintiff had the bacteria on his skin prior to his admission to the hospital. Staph bacteria poses no threat to an otherwise healthy person until it infects an open wound.
Dr. Greer testified plaintiff was informed prior to his operation that infection was an attendant risk of surgery. He was given an antibiotic for staph before and after surgery. In Dr. Greer's opinion, nothing else could have been done to prevent the infection.
The deposition of Dr. G. Pankey, a highly qualified expert in the field of infectious diseases, was also introduced into evidence. Dr. Pankey testified that most individuals who contract a staph infection after surgery had the bacteria on their skin prior to surgery. Since the bacteria is found within the subcutaneous sweat glands and hair follicles of some patients, the organism may survive the cleansing of the skin with antiseptics. The doctor also testified that susceptibility to staph infection varies from individual to individual. With the present state of medicine, there is no practical way to determine prior to surgery who may be more susceptible to staph infection or who may be a "carrier" of the staph bacteria. Dr. Pankey concluded that there is no way to completely eliminate staph infections, which are an unavoidable risk of surgery.
*298 After a review of all the available medical records, Dr. Pankey was of the opinion that plaintiff had received excellent medical care.
The trial court, in its reasons for judgment, found that Glenwood Hospital was not strictly liable for the damages suffered by plaintiff. The court differentiated the instant case from DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La.1981), where the Supreme Court, using a products liability theory, held that a blood bank was strictly liable for injuries to a person who received blood contaminated with hepatitis. DeBattista is the first case to apply La.C.C. Arts. 2315 and 2317 to a "health care provider." The court concluded that since the origin of the staph bacteria was unknown, DeBattista and the other jurisprudence on liability without legal fault was not applicable. The trial court also found that the doctrine of res ipsa loquitur was not applicable to this case because the record did not establish that the infection would not have ordinarily occurred without fault on the part of defendant, a prerequisite to the application of the doctrine. Finally, the court concluded that the defendant hospital did not deviate from prevailing standards in either antiseptic procedures and precautions or in post-operative attention, care, and diagnosis. Accordingly, there was no negligence on the part of Glenwood Hospital.
Plaintiff's primary contention on appeal is that the trial court erred in rejecting his demands under the rationale of DeBattista v. Argonaut-Southwest Ins. Co., supra. He contends that the hospital is strictly liable for his injuries under La.C.C. Art. 2317. Plaintiff further contends that Glenwood Hospital had a defective "thing" within its custody, and this "thing" caused damage to him. Therefore, under the provisions of Art. 2317, the hospital is strictly liable for his injuries without any evidence of legal fault. We find that DeBattista does not compel such a conclusion.
La.C.C. Art. 2317 provides:
We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
The purpose of strict liability under this article is to protect a person from the defect of a "thing" under the control of another which creates an unreasonable risk of harm. Loescher v. Parr, 324 So.2d 441 (La. 1975).
Because the term "thing" encompasses an infinite subject matter, and since the distinction between negligence cases and strict liability cases has often been misunderstood, the Supreme Court has recently reiterated the effect of applying strict liability under Art. 2317. In Kent v. Gulf States Utilities Co., ___ So.2d ___ (La.1982),[1] the Supreme Court made the following statement:
Under strict liability concepts, the mere fact of the owner's relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody.
The court concluded that:
... [I]n a strict liability case in which the claimant asserts that the owner's damage-causing thing presented an unreasonable risk of harm, the standard for determining liability is to presume the owner's knowledge of the risk presented by the thing under his control and then to determine the reasonableness (according to traditional notions of blameworthiness) of the owner's conduct, in the light of that presumed knowledge.
Assuming that Art. 2317 is applicable to this case, we find that Glenwood Hospital is not strictly liable for the damages suffered by plaintiff. First, the "thing" that allegedly caused the unreasonable risk of harm of which plaintiff complains can only be the staph bacteria. As noted by the trial court, the origin of the *299 staph bacteria could not be determined. Therefore, it is not possible to establish the hospital's relationship with, or responsibility for, the subsequent infection. Second, even if such a relationship could be established, and if the hospital were presumed to know of the risk, the evidence shows that the precautions employed by the hospital to prevent infection met the highest standards and were, therefore, reasonable under the circumstances. Consequently, Glenwood Hospital cannot be held strictly liable for the injury suffered by plaintiff.
Plaintiff also contends that the trial court erred in failing to apply the doctrine of res ipsa loquitur to this case.
Res ipsa loquitur is an evidentiary principle, the applicability of which can only be determined at the conclusion of trial. Garrison v. Hotel Dieu, 319 So.2d 557 (La. App. 4th Cir. 1975), writ denied 323 So.2d 129.
Res ipsa loquitur is a rule of circumstantial evidence. Where there is no direct evidence to show cause of injury, and the circumstantial evidence indicates that the negligence of defendant is the most plausible explanation for the injury, the doctrine applies. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973).
To apply the doctrine of res ipsa loquitur, three criteria must be met:
(1) The accident must be of a kind that does not ordinarily occur in the absence of negligence;
(2) The injury was caused by an instrumentality within the control of defendant; and
(3) Evidence as to the cause of the accident is more readily available to the defendant.
Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (1972); Ray v. Ameri-Care Hospital, 400 So.2d 1127 (La. App. 1st Cir. 1981), writ denied 404 So.2d 277.
The record in this case clearly indicates that in the ordinary course of affairs, a certain number of hospital patients will contract a staph infection regardless of the conduct of the hospital. Therefore, we must conclude, as did the trial court, that an essential element for the applicability of res ipsa loquitur is missing. The evidence does not establish that plaintiff's infection would not ordinarily have occurred without the negligence of defendant.
After a careful examination of the evidence in this case, and applying the standard of appellate review as set out in Canter v. Koehring Co., 283 So.2d 716 (La. 1973), we cannot say the trial court was manifestly erroneous in finding that Glenwood Hospital was not negligent in the care it provided plaintiff.
The standard of care required of a hospital does not require a "community standard" in order to make a determination of negligence under a particular set of circumstances. A hospital is bound to exercise the necessary care toward a patient that his condition requires. The hospital's duty extends to protecting a patient from dangers which may result from the patient's physical and mental incapacities as well as those external circumstances peculiarly within the hospital's control. Whether a hospital has breached its duty of care owed to a patient depends on the facts and circumstances of the particular case. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974).
However, a hospital's duty has been traditionally limited by the jurisprudence. A hospital is not an insurer of a patient's safety. The rules of care are limited by the principle that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen. Goodeaux v. Martin Hospital, Inc., 333 So.2d 717 (La.App. 2d Cir. 1976), writ denied 338 So.2d 295.
Under the circumstances of the instant case, there was no duty imposed on the hospital to exercise any greater precaution against infection beyond those measures which were taken. Moreover, the post-operative attention received by plaintiff was reasonable in view of this particular patient's condition.
*300 For the reasons assigned, the judgment of the trial court is affirmed at plaintiff's costs.
NOTES
[1] We note that the Kent decision is not yet final upon the date this decision is rendered, however, we find that Kent merely reiterates and clarifies past jurisprudence.