MADELEINE M. LANDRIEU, Judge.
|T Robyn Papania filed a medical malpractice action, individually and on behalf of her minor child, Bradley Papania, against the State of Louisiana through the Board of Supervisors of Louisiana State University Agricultural and Mechanical College d/b/a/ the Medical Center of Louisiana, New Orleans (“Charity Hospital”) and Dr. Toni Denson.[1] Charity Hospital filed this appeal of a trial court judgment on a jury verdict finding that Charity Hospital breached the stándard of care and that this breach was a proximate cause of the damages sustained by the plaintiffs. Charity Hospital asserts that the jury erred in finding that it was independently liable, separate and distinct from its vicarious liability for any of its employee health care providers. Ms. Papania filed a cross-appeal alleging that the jury erred in finding that Dr. Denson’s negligence was not a proximate cause of the plaintiffs’ damages. For the reasons that follow, we affirm the judgment of the trial court.
FACTS
In June and July of 1999, Bradley Papa-nia was brought by his mother to the Charity Hospital emergency room four times in a one month period, each time with ^virtually the same symptoms. On July 22, 1999, within approximately twelve to fourteen hours of his release following the fourth visit, 20-month old Bradley died as a result of an undiagnosed volvulus (a twisted intestine) that led to internal bleeding. The history of his treatment is as follows:
On June 21, 1999, Bradley was admitted to the emergency room with abdominal pain, vomiting and diarrhea. He was released that day with a diagnosis of gastroenteritis.
Bradley’s mother brought him back to the emergency room five days later with symptoms of abdominal pain, vomiting, streaks of blood in his diarrhea, and de-, creased appetite. He was admitted to Charity Hospital’s intensive care unit. Once stable, Bradley was transferred to the pediatric ward where he remained hospitalized for two weeks. During this hospital stay, a CT scan and ultrasound of his abdomen were performed. Despite the fact that both test results were abnormal, the CT scan was never repeated prior to his discharge. Several subsequent ultrasounds were performed. Each one showed signs of improvement, with the last one being designated as “normal.” Bradley was discharged on July 11, 1999 without a diagnosis.
As was standard procedure at Charity Hospital at the time, upon discharge, Ms. Papania received an unsigned and undated piece of paper containing a short summary of Bradley’s medical history from this hospital stay.[2] This information was apparently given to Bradley’s mother so that she could pass it along to physicians providing follow-up care. Notably, certain critical information on this piece of paper was incorrect. It erroneously recorded that both the CT scan and | ^ultrasound were normal, when, in fact, the CT scan was abnormal and two prior ultrasounds had been abnormal. Bradley returned to the Charity Hospital emergency room two days later, on July 13, 1999, with the exact same symptoms as the previous visit. He was discharged that day, still with no diagnosis.
*259 Eight days later, on July 21,1999, Bradley returned to the Charity Hospital emergency room with the same symptoms for the fourth time. On this date, he was under the care of Dr. Denson, a third year resident. When Bradley was admitted to the emergency room, Ms. Papania gave Dr. Denson the summary that she received from Charity Hospital when Bradley was discharged after his two-week stay. Dr. Denson requested and received from the record room Bradley’s 110-page medical record from this two-week stay; however, she acknowledged that she did not review the record in its entirety. Notably absent from this record, however, was the discharge summary from Bradley’s earlier hospital admission as it had not yet been dictated. Again, following a six-hour stay in the emergency room, Bradley was discharged with a diagnosis of a bleeding disorder, abdominal pain, and gastroenteritis. Approximately twelve to fourteen hours after his discharge, Bradley died.
Following trial, the jury rendered a verdict for the plaintiffs. In answering the jury interrogatories, the jury found that both Dr. Denson and Charity Hospital breached the applicable standard of care owed to Bradley. The jury further found that the breach by Dr. Denson was not a proximate cause of the damages suffered by the plaintiffs, but that the breach by Charity was a proximate cause of the damages. It is from this judgment that Charity Hospital appeals. Ms. Papania has filed a cross appeal in which she alleges that the jury erred in finding that Dr. Denson’s breach was not a proximate cause of their damages.
I «ASSIGNMENTS OF ERROR
I. In its appeal, Charity Hospital contends that the jury erred in finding it independently hable, separate and distinct from its vicarious liability for any of its employee health care providers.
II. In her cross-appeal, Ms. Papania contends that the jury erred in finding that Dr. Denson’s breach of the standard of care was not a proximate cause of Bradley’s death.
DISCUSSION
It is well settled that a court of appeal may not set aside a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong; and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable. Johnson v. Morehouse General Hosp., 2010-0387, p. 12 (La.5/10/11), 63 So.3d 87, 96; Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). To reverse a jury’s factual findings, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court’s conclusion, and the finding must be clearly wrong. Johnson, 2010-0387 at p. 12, 63 So.3d at 96; Kaiser v. Hardin, 2006-2092, pp. 11-12 (La.4/11/07), 953 So.2d 802, 810. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Johnson, at p. 12, 63 So.3d at 96; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
I. Charity Hospital’s independent liability.
In order to recover damages for the independent liability of a hospital in a medical malpractice case, the plaintiff must establish the following elements through expert medical testimony: (1) the standard of care applicable to the defendant health-care provider; (2) breach of the standard of care by the defendant *260 health-care provider; (3) cause-in-fact between the breach and the damages [.¡suffered; and (4) actual damages. La. R.S. 40:1299.39; Marchetta ex rel. Marchetta v. CPC of Louisiana, Inc., 99-0485, p. 11 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, 158. Charity Hospital asserts that the jury’s finding that Charity Hospital breached the standard of care and that this breach was a proximate cause of the damages suffered by the plaintiffs is contrary to the evidence and the law. Further, Charity Hospital alleges that Ms. Papania failed to provide expert testimony of administrative negligence on its part. This assignment of error is without merit.
Our courts have formulated duties of care on an individual basis to determine when a hospital is responsible for its own acts or omissions which cause injury to a patient. Sibley v. Board of Sup’rs of Louisiana State University, 477 So.2d 1094, 1099 (La.1985) (“Sibley I”). Examples include: a governing board’s duty to select its employees with reasonable care, Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969), overruled on other grounds by Garlington v. Kingsley, 289 So.2d 88 (La.1974); the board’s duty to furnish the hospital with reasonably adequate supplies, equipment and facilities for use in treatment and diagnosis of patients, Snipes v. Southern Baptist Hospital, 243 So.2d 298 (La.App. 4th Cir.1971); Lauro v. Travelers Ins. Co., 261 So.2d 261 (La.App. 4th Cir.1972); and a duty to provide adequate procedures for maintenance and safety of its grounds and buildings, Head v. St. Paul Fire & Marine Ins. Co., 408 So.2d 1174 (La.App. 3d Cir.1982); Roark v. St. Paul Fire & Marine Ins. Co., 415 So.2d 295 (La.App. 2d Cir.1982). A breach of one of the above listed duties or a similar duty which causes injury to the patient may constitute independent negligence of a hospital’s governing board even in the absence of any finding of negligent conduct by an | r,employee. Sibley I, 477 So.2d at 1099; Armand v. State, Dept. of Health & Human Res., 97-2958, pp. 7-8 (La.App. 1 Cir. 2/23/99), 729 So.2d 1085, 1088-89.
In the instant case, the record is replete with expert testimony from which the jury could reasonably infer administrative or system negligence on the part of Charity Hospital.
Dr. Gerald M. Haase, an expert qualified by the court in the fields of pediatric surgery and critical care, testified that two different “system failures” led to Bradley’s death. He first testified that the failure of the system to follow up on a “markedly abnormal study” was a “collective failure of the Charity Hospital’s system to follow up on a very serious abnormal study.” The second system failure identified by Dr. Haase was the “lack of right information, lack of communication and lack of documentation” available to Dr. Denson and Dr. Marsh, all of which led to Bradley’s death.
At the time of Bradley’s treatment at Charity Hospital, Charity Hospital had a procedure in place for a detailed summary of the patient’s admission history to be dictated and transcribed at discharge. In Bradley’s case, however, this discharge summary from his two-week in-patient stay was not dictated until after his death. As a result, it was unavailable to Dr. Den-son when Bradley came under her care. Initially, Dr. Denson testified that she had reviewed the July 11, 1999 discharge summary from the two-week hospitalization. However, when confronted with evidence that established that the discharge summary was not dictated until August 10, 1999 and was not transcribed until August 11,1999, two weeks after Bradley died, Dr. Denson recanted and realized she did not have the benefit of this history. Bradley’s complete medical records from his two- *261 week hospitalization (including time in ICU) contained critical information necessary for his continuity of care. 17The failure of Charity Hospital to have had the discharge summary dictated, transcribed, and available to subsequent healthcare providers within its system, supports a finding of an administrative breach. While the jury might have held Dr. Denson responsible for this lack of attention to a prior history, it did not. It chose to lay the blame for this omission on Charity Hospital. As there is adequate support for this finding in the record, we will not disturb it on appeal.
The second system failure identified by Dr. Haase was the absence of any continuity of care in the care provided to Bradley. Dr. Haase testified that he determined that the “sequence of error” of the transmission of incorrect information cost Bradley his life. Specifically, Dr. Haase testified that Charity Hospital’s practice upon discharge of providing patients with partial summaries of their medical treatment on a scrap of paper was a breach in the standard of care owed to Bradley. He further testified that this undated, unsigned, unverified piece of paper containing incorrect information was a cause of Bradley’s death.
Dr. Haase’s opinion on this point was supported by the testimony of both Dr. Denson and Dr. Marsh. Dr. Denson testified that these summaries were a common practice at Charity Hospital. She stated that because they did not have electronic records, the physicians would have to order the charts from the record room. Sometimes they received them in a useful time period; sometimes they never received them. As such, they considered these hand-written summaries in the treatment of patients. In the instant case, Dr. Denson testified that although she received the record from the record room, it was voluminous. Thus,’ she relied on the history provided by Ms. Papania, the admit notes, and this piece of paper — which incorrectly stated that the CT scan and the ultrasound results were normal.
| sThis “sequence of error” continued when Dr. Denson presented Bradley’s case to the attending physician, Dr. Melinda Marsh. According to Dr. Marsh’s testimony, it was not unusual for a family to receive a summary of a hospitalization when their child was discharged. She also stated that these summaries were not 100% accurate, and, as such, she would not rely solely on such a summary. She further testified that she “presumed” that Dr. Denson verified the information with the record. This assumption was incorrect. We find it reasonable that the jury could have found that this “sequence of error” constituted a system failure on the part of Charity Hospital.
The jury verdict is fully supported by the record. As such, we find no error.
II. Dr. Denson’s breach of the standard of care.
The jury found that Dr. Denson breached the standard of care regarding Bradley’s medical treatment, but found that this breach was not a proximate cause of the damages suffered by the plaintiffs. Ms. Papania contends that the jury erred in its finding and that there is ample evidence in the record to support causation on the part of Dr. Denson. She further asserts that Dr. Denson made an admission at trial as to her part in the causation of Bradley’s death and that this constitutes a judicial admission.
In order to reverse the jury’s determination of fact under the manifest error standard of review, the appellate court must review the record in its entirety and (1) find that a reasonable factual basis *262 does not exist for the finding, and (2) must further determine that the record establishes that the factfinder is clearly wrong and manifestly erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). Here, the jury was presented with two permissible views, both supported by expert testimony. Dr. Denson and Charity Hospital | (¡presented evidence and the expert testimony of Dr. Nicholas Danna. Ms. Papania presented evidence and the expert testimony of Dr. Haase.
The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Hanks v. Entergy Corp., 2006-477, pp. 23-24 (La.12/18/06), 944 So.2d 564, 580-581; Lasyone v. Kansas City Southern R.R., 2000-2628, p. 13 (La.4/3/01), 786 So.2d 682, 693. Credibility determinations, including the evaluation of and resolution of conflicts in expert testimony, are factual issues to be resolved by the trier of fact, which should not be disturbed on appeal in the absence of manifest error. Hanks, 2006-477 at p. 24, 944 So.2d at 581; Lasyone, 2000-2628 at p. 13, 786 So.2d at 693. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Galen-Med, Inc. v. Porter, 2005-0788, pp. 13-14 (La.App. 4 Cir. 3/29/06), 928 So.2d 681, 688.
As discussed above, the jury might have concluded that Dr. Denson’s breach of the standard of care was a proximate cause of Bradley’s injuries. Instead, it chose to lay the blame on Charity Hospital for its administrative and/or system failures. Based on the record before us, we cannot say that this finding is clearly erroneous. Thus, we find no error.
CONCLUSION
We fail to find manifest error on the part of the trial court. The judgment is affirmed.
AFFIRMED

. Suit is brought pursuant to the Medical Liability for State Services Act, La. R.S. 40:1299.39 et. seq.

. Testimony at trial reflects that this summary was probably written by a resident or an intern.